CENTRAL AUTOMOBILE TIRE COMPANY *vs.* COMMISSIONER OF BANKS.

Suffolk.    January 21, 1925. — May 21, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Trust*, Constructive. *Trust Company. Banks and Banking. Equity Jurisdiction*, To enforce constructive trust.

If a master, to whom was referred a suit in equity by a depositor in a trust company against the commissioner of banks in possession of its property and business to establish a constructive trust as to the amount of the deposit by reason of fraud of an officer of the trust company in procuring it, finds that "As far as the deposit of money in this case is concerned, no evidence was produced from which I could specifically identify it after deposit or trace it into any definite and isolated fund," the suit cannot be maintained.    Following *Yesner* v. *Commissioner of Banks, ante*, 358.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 20, 1921, to have the

defendant commissioner of banks adjudged a constructive trustee of a deposit made by the plaintiff in the Cosmopolitan Trust Company by reason of fraud of the trust company's president.

The suit was referred to a master. Material facts found by him are described in the opinion. The suit came on to be heard by *Crosby*, J., and was reserved by him for determination by the full court upon the pleadings, the master's report, exceptions by the plaintiff, and a finding by the single justice "that there was, at all times, in the possession of the respondent or the Cosmopolitan Trust Company, from August 24, 1920, up to the present time, cash or specie, or deposits to the credit of the Cosmopolitan Trust Company in other banks, amounts of more than $25,000."

*E. M. Schwarzenberg*, for the plaintiff.

*D. L. Smith*, (*R. W. Nason* with him,) for the defendant.

RUGG, C.J.    This is a suit in equity whereby the plaintiff seeks to impose a constructive trust in its favor upon property of the trust company in the hands of the commissioner. The salient facts are these: The president of the trust company, Max Mitchell, solicited an additional deposit from Charles M. Rudginsky, treasurer of the plaintiff, on August 23, 1920, on the ground that he desired "to show a big balance" in deposits at the end of the month, at the same time representing that the trust company was a growing and strong institution. On the day following the treasurer handed a check of the plaintiff to the president of the defendant for $25,000 and received twenty-five certificates of deposit from the trust company, all in the same form, each certifying that there had been deposited with the trust company $1,000 payable to the order of the plaintiff upon surrender of the certificate. There is set forth at length in the report of the master a description of typical instances of a large number of loans made by the trust company to a great number of corporations and other persons engaged in various mercantile enterprises, either upon no security at all or upon utterly insufficient security or credit. Without reciting these in detail, it is sufficient to quote the conclusion of the master's report.

"For a long period prior to January 1, 1920, and continuing up to the closing of the bank, the reserve was never kept up to the legal requirements. During the month of August the cash reserve required was from $585,000 to $701,000, but at all times up to August 24, 1920, the trust company was short at least $500,000 of the required amount. For a considerable period prior to August 24, 1920, the bank had great difficulty in meeting its daily clearings because of its inability to secure ready cash. In July, 1920, in an attempt to obviate this difficulty, a loan for $1,500,000 was obtained from the Irving National Bank of New York by giving therefor collateral in the proportion of two hundred per cent, which collateral was selected by a representative of the Irving National Bank who came to Boston for that purpose. On August 24, 1920, there was due from these enterprises and irresponsible individuals the sum of approximately $4,500,000 and the accounts of the trust company in foreign banks were overdrawn $1,200,000 and the various liabilities were more than $4,500,000 greater than its assets at a fair valuation. The only expedient left to Max Mitchell to make good the losses by reason of these loans was to obtain from the general public as much money as possible by way of additional deposits, and for this purpose he approached his so-called friends and acquaintances who he knew had money in other banks in an effort to persuade them to transfer their deposits to the Cosmopolitan Trust Company, making representations as to its strength and solidity in order to induce them to so transfer their accounts, one of whom was said Charles M. Rudginsky to whom he made the representations above referred to. From the above evidence it is plain, and I therefore find: that the bank was insolvent at the time said deposit of $25,000 was made; that at the time of its acceptance by Max Mitchell from Charles M. Rudginsky on behalf of the Central Automobile Tire Company Mitchell knew that the bank was insolvent; that the representations which he had made were false; and that said Rudginsky was ignorant of their falsity and was induced because of these representations to deposit said $25,000."

The further finding is made by the master: "As far as the deposit of money in this case is concerned, no evidence was produced from which I could specifically identify it after deposit or trace it into any definite and isolated fund."

The case at bar is governed in every particular by the legal principles declared in *Yesner* v. *Commissioner of Banks, ante,* 358, just decided. So far as there are differences between the facts of the two cases, they relate to matters indifferent to the controlling rules of law.

The facts fail to establish any special equity in favor of the plaintiff above all others who may have become depositors during the period of the insolvency of the trust company.

There is no fund into which the deposit of the plaintiff can be traced. It became a part of the general assets of the trust company as distinguished from special property or a particular fund. Hence, under the principle of *Lowe* v. *Jones,* 192 Mass. 94, no trust can be established in favor of the plaintiff.

A decree is to be entered dismissing the bill with costs.

*So ordered.*