GOLDIE LEVENBAUM *vs.* HANOVER TRUST COMPANY & another.

Suffolk.    March 19, 1925. — May 26, 1925.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Bankruptcy*, Preference, Trustee's right to follow preferential payment. *Trust Company*, In liquidation: funds received from depositor preferred by a bankrupt. *Assignment.*

An employee of one who, beginning in December, 1919, engaged in fraudulent business which of necessity rendered him hopelessly insolvent from the start, in July, 1920, when he had reasonable cause to believe his employer insolvent, received from him commissions as an employee and payments of debts amounting to $12,150. This sum he deposited in a trust company in this Commonwealth, and in the same account deposited $10,878 which had been paid him by his employer for other creditors. Against this account he had drawn $12,726 when in September, 1920, the commissioner of banks took possession of the property and business of the trust company. The employer was adjudged bankrupt and a trustee in bankruptcy was appointed. Thereafter the employee proved his claim against the trust company with the commissioner, and after such proof assigned his claim to one who as assignee brought a suit in equity against the trust company and the commissioner to compel recognition and payment of dividends on the claim. The trustee in bankruptcy of the employer intervened as a plaintiff, and a final decree was entered directing payment of all dividends on the claim to the trustee in bankruptcy of the employer. *Held*, that

(1) In the circumstances, the trustee in bankruptcy under § 60 (a) and (b) of the bankruptcy act could recover the "property or its value" from the employee;

(2) In the circumstances, the estate of the insolvent employer should be treated as a trust fund which belonged to the creditors and to their representative, the trustee in bankruptcy;

(3) The trustee in bankruptcy of the employer could follow the property or the credit into the trust company and hold it against the plaintiff, who became an assignee of the fund in the bank after the adjudication in bankruptcy and after the commissioner of banks took possession of the business of the trust company;

(4) G. L. c. 231, § 5, gives a new remedy but does not alter or affect substantive rights as they existed at common law;

(5) The right of the assignee of the chose in action to bring an action thereon depended on the law of the forum;

(6) The right of the trustee to avoid the preferential payments to the employee conferred by the bankruptcy law, § 60 (a) and (b), is a right which is prior in time to the equitable right of the plaintiff derived from the assignment of the legal right of the employee, and must prevail;

(7) The trustee in bankruptcy of the employer was entitled in this suit to have awarded to him the right to stand, as to the trust company and its funds in the hands of the commissioner of banks, in the shoes of the depositing employee and to have all the dividends in question paid to him;

(8) It not being contended in this suit that the trust company received the deposit as a preference paid by the employer, no question as to any right of the trustee in bankruptcy to be preferred as a creditor over the other creditors of the trust company and to follow and identify the deposited funds among the general commercial accounts of the trust company, was presented; distinguishing *Yesner* v. *Commissioner of Banks*, 252 Mass. 358;

(9) The employee, assignor, was not a necessary party to the suit, although it would not have been improper to join him.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 29, 1922, by the assignee of a claim of a depositor in the Hanover Trust Company to require the commissioner of banks in possession of its property and business to recognize her claim.

The trustee in bankruptcy of Charles Ponzi was permitted to intervene to claim all the rights of the depositor on the ground that the deposit was of funds paid by Ponzi to the plaintiff's assignor as a fraudulent preference under the national bankruptcy act.

The suit was referred to a master. Material facts found by the master are described in the opinion. Exceptions by the plaintiff to the master's report were heard by *Crosby*, J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report, and a final decree directing the payment to the trustee in bankruptcy of Ponzi as intervenor of all such dividends as were declared on the claims made by the plaintiff's assignor. The plaintiff appealed.

*H. Bergson*, for the plaintiff.

*E. J. Owens,* for the trustee in bankruptcy of Ponzi, intervenor.

PIERCE, J.  This is an appeal from a final decree of a single justice of this court whereby the trustee in bankruptcy of the estate of Charles Ponzi, upon a petition to intervene as a claimant, was adjudged to be entitled to receive the dividends on certain moneys deposited by one Louis H. Schaffer in the Hanover Trust Company and assigned by Schaffer to the plaintiff in this suit.

The facts taken from the report of the master concisely stated are as follows:  In August, 1920, when the Hanover Trust Company was taken over by the bank commissioner, there was a deposit balance of $10,302.08 standing in the trust company to the credit of one Louis H. Schaffer.  February 12, 1921, Schaffer duly filed a proof of claim against the Hanover Trust Company for the above stated amount, and a certificate of proof of claim was issued by the bank commissioner but was never delivered.  On the same date Schaffer assigned his claim to the plaintiff, Goldie Levenbaum, who made demand upon the bank for the certificate and for the payment of a dividend of twenty-five per cent which, by an order of this court, the commissioner had been authorized to pay.  The commissioner refused to deliver the certificate or to pay the dividend to Louis H. Schaffer or to Goldie Levenbaum because the trustees in bankruptcy of the estate of Charles Ponzi gave notice to the defendants that they claimed that the deposits were assets of the Ponzi estate.  After the plaintiff brought this suit, the trustees in bankruptcy of Ponzi asked leave to intervene in the proceedings to establish their claim to the deposit and to all dividends payable thereon, as assets in bankruptcy of Ponzi, inasmuch as the deposit consisted of payments made to Schaffer by Ponzi both as commissions and upon Ponzi notes.

About Christmas, 1919, Schaffer was told by Ponzi that he was to launch a scheme with a negligible capital, in which he desired Schaffer to invest.  The scheme as outlined was one of sending American money to Italy, changing it into Italian lire at the rate of $5 worth of lire for one American dollar, buying international reply coupons with the pro-

ceeds, bringing these coupons back to America and then turning them into United States postage stamps at a large profit. Again, in May, 1920, Ponzi suggested that Schaffer enter his employ as an agent by reason of his large Hebrew acquaintance, agreeing to pay him a commission of ten per cent on all business he might bring in. On June 7, 1920, Schaffer entered the service of Ponzi on the above terms. He was informed that his duties would be to induce all those he could, particularly his Jewish friends, to invest in the enterprise; to explain the proposition to all prospective customers; to show them that the business was legitimate under the United States postal laws; and to inform them that each investor would get a note for the money invested payable in ninety days with a fifty per cent increase, but the same would be paid in forty-five days instead of ninety owing to the enormous profits to be realized from the business. Schaffer entered the service of Ponzi in good faith, believing the business to be as represented by Ponzi, but in a few days, from daily observation of the nature of the business actually transacted in the office, learned that the business was not at all dealing in reply coupons as Ponzi pretended and as Schaffer represented to his customers, but was the sale of Ponzi notes, the surrender of matured notes, and the getting back of original investments with a fifty per cent increase.

Ponzi had his first transaction on December 20, 1919, and his last on August 9, 1920. "He made no investments of any kind, so that all the money he had at any time was solely the result of loans by his dupes." *Cunningham* v. *Brown*, 265 U. S. 1, 8. In view of the business actually done, Ponzi was of necessity hopelessly insolvent from the start. He was petitioned into bankruptcy August 9, 1920, and was adjudged bankrupt on October 25, 1920; the intervening petitioner is now his trustee in bankruptcy.

All money received by Schaffer from Ponzi prior to July 23, 1920, by way of commissions or in payments of notes, he invested in the name of his wife in Ponzi notes, his wife having no money other than what he gave her. Before July 23, 1920, Schaffer kept his account in the Cosmopolitan

Trust Company, and on that date closed out his account and then and thereafter did his banking with the Hanover Trust Company until the bank commissioner took possession of its property in August, 1920. On July 23, 1920, Schaffer had reasonable cause to believe Ponzi to be insolvent, as, in fact, he was. On that date Ponzi paid him in accordance with his practice the sum of $7,352.30 as commissions earned during the week ending that day. July 24, 1920, Schaffer deposited $6,000 with the Hanover Trust Company, and thereafter $1,500 on July 27, $3,000 on July 29, $1,200 on July 30 and $450 on August 5, in all $12,150 for commissions and notes. During the same time there was further deposited $10,878.75, the avails of notes which Schaffer collected of Ponzi for others.

Against the total deposits of $23,028.75, the account shows check withdrawals of $12,726.67, leaving a balance of $10,302.08 which the trustee seeks to hold as voidable preferences or fraudulent transfers. We assume without a review of the reported evidence that the plaintiff is a purchaser for value without notice of Schaffer's rights against the bank.

As against Schaffer the facts found by the master, above succinctly stated, establish that Ponzi was insolvent in December, 1919, and continued to be insolvent until the filing of the petition in bankruptcy on August 9, 1920, and the adjudication in bankruptcy on October 25, 1920; that the payments of money were each of them made within four months of the filing of the petition; that Schaffer thereby was enabled to receive a greater percentage of his debt than any other creditor of the same class; and that Schaffer, receiving the payments, had reasonable cause to believe that such payments would effect a preference. In these circumstances the trustee in bankruptcy under the bankruptcy act § 60 (a) and (b) could recover the "property or its value" from Schaffer. *Cunningham* v. *Brown, supra.*

Schaffer having deposited the payments in the Hanover Trust Company, the question arises, Can the trustee follow that property or that credit into the trust company and hold it against the plaintiff, who became an assignee of the fund in the bank after the petition in bankruptcy and after the

commissioner of banks took possession of the property of the Hanover Trust Company?   There appear to be no decisions which directly involve the question posited.   On principle the object sought to be reached by the bankruptcy law would seem to be most effectively attained by treating the estate of an insolvent as a trust fund which belongs to the creditors and to their representative, the trustee in bankruptcy.   Remington on Bankruptcy, § 1626, and cases cited. *In re Fechheimer Fishel Co.* 212 Fed. Rep. 357.   This theory is consistent with the requirement of the surrender of preferences and the return of property seized on legal process.

Holding, as we do, that the trustee has the right on equitable principles to follow the trust fund through the creditor into the bank of the creditor, and that the illegal payments from the fund to the creditor are traced and identified by the facts found by the master, *Hewitt* v. *Hayes*, 205 Mass. 356, there remains the further question, whether the plaintiff, as the assignee in writing of a nonnegotiable chose in action, and a purchaser for value without notice, took the legal title or an equitable title to the chose in action. . The statute, G. L. c. 231, § 5, upon which the plaintiff relies in support of the contention that she acquired the legal title by the written assignment, gives a new remedy but does not alter or affect the substantive rights as they existed at common law. *Leach* v. *Greene*, 116 Mass. 534.   *Wright* v. *Graustein*, 248 Mass. 205, 208, 210.   *Carozza* v. *Boxley*, 203 Fed. Rep.   673. *Myers* v. *Davis*, 22 N. Y. 489.   *Bentley* v. *Standard Fire Ins. Co.* 40 W. Va. 729.   *Watkins* v. *Angotti*, 65 W. Va. 193. The right of an assignee of a chose in action to bring an action depends upon the law of the forum. *American Lithographic Co.* v. *Ziegler*, 216 Mass. 287.   The right of the trustee to avoid the preferential payments to Schaffer conferred by the bankruptcy law, § 60 (a) and (b), is a right which is prior in time to the equitable right of the plaintiff derived from the assignment of the legal right of Schaffer, and must prevail.   Williston on Contracts, § 438, and cases collected.   The conclusion that the trustee in bankruptcy can seize by appropriate proceedings the right of Schaffer to reach the preferential deposit made by him in the Hanover

Trust Company is not intended to limit the effect of *Yesner* v. *Commissioner of Banks*, 252 Mass. 358, *Central Automobile Tire Co.* v. *Commissioner of Banks*, 252 Mass. 363, *Salem Elevator Works, Inc.* v. *Commissioner of Banks*, 252 Mass. 366, nor to hold that the trustee can follow the deposit as such into the general funds of the Hanover Trust Company, his only right being to receive the ordinary dividends allowed to general creditors in the liquidation of the trust company.

Schaffer, having assigned his entire claim to the plaintiff, was not a necessary party to the suit brought by the plaintiff, although he might properly have been joined on the motion of the plaintiff when the trustee was allowed to intervene as a claimant.

*Decree affirmed.*