[Civ. No. 15030. First Dist., Div. One. June 23, 1952.]

JUD WHITEHEAD HEATER COMPANY (a Corporation),
Respondent, v. LOUIS OBLER et al., Appellants.

JUDSON J. WHITEHEAD, JR., Respondent, v. LOUIS
OBLER et al., Appellants.

Francis T. Cornish, Cornish & Cornish and Howard W. Wayne for Appellants.

Charles M. Stark, Paul W. McComish and Fredrik S. Waiss for Respondents.

BRAY, J.—These two actions, which were consolidated for trial, sought an accounting and to impress constructive trusts on certain real and personal property alleged to have been acquired by defendant Louis Obler* and his wife, defendant Bernice Obler, with moneys embezzled by him from the respective plaintiffs. From an amended judgment impressing such trusts, defendants appeal.

### Questions Presented

1. Sufficiency of evidence to show wrongful taking.
2. Were the cases improperly consolidated?
3. Alleged error in allowing amendment of complaint to conform to proofs.
4. Was a part of plaintiffs' claim barred by the statute of limitations?
5. Effect of judgment against defendant Bernice.
6. Effect of judgment against defendant.
7. Are plaintiffs entitled to interest on the embezzled moneys?
8. Can items purchased on open account be impressed with a trust?
9. Were the findings concerning defendant's claimed ownership in Electric Kitchen Appliance Company supported?
10. Did defendant lend the corporation $10,000?

### Facts and Judgment

The complaint in the case of Whitehead as an individual sought to recover alleged misappropriations up to the date

---

*Herein referred to as "defendant."

of the incorporation, and in the corporation case to recover misappropriations subsequent thereto. Defendants answered, claiming that the withdrawals by defendant of plaintiffs' moneys were with their consent, and setting up an alleged contract under which defendant was to have an interest in plaintiffs' businesses, and alleging a loan by defendant to the corporation of $10,000, which loan had not been repaid. In view of defendant's admissions in his answer and his stipulations, it is not necessary to detail the methods by which defendant obtained the moneys, nor all the facts, merely those relating to the points raised on appeal. From 1940 Whitehead operated the "Jud Whitehead Heater Company" which sold hot water heaters. This continued until August, 1946, when the "Jud Whitehead Heater Company, a corporation," was formed which succeeded to the assets of the first business. Defendant was Whitehead's first employee, became general manager of Whitehead's and was the general manager, vice-president and a director of the corporation. In February, 1948, it was discovered that defendant had systematically taken funds from both businesses by drawing checks on them respectively and by cashing customers' checks. Defendant was convicted of grand theft relating to the obtaining of certain moneys from the Bank of America on fictitious invoices of the company. Defendant Bernice did not know of these appropriations. With the moneys so obtained defendant made part payments on a home, title to which is in the names of both defendants, and purchased many articles of furniture, clothing and jewelry. Defendant stipulated that a total of $105,434.32 was taken by defendant; that specific amounts totaling said sum were paid to specific creditors; that defendant purchased from said creditors certain articles of personal property consisting generally of furniture, jewelry and clothing, and that certain of those articles are now in the possession of defendant Bernice. The court, in its findings and judgment, found that of the total sum taken $20,092.34 went into the purchase price of the home and impressed a lien thereon for said sum and interest. It further found that certain sums went into partial payment of the purchase price of certain jewelry, furniture, and other personal property in defendant Bernice's possession, and impressed liens thereon totaling $10,564.81. It also found that certain articles of personal property had been paid for in full from said moneys;

that the title to said personal property in possession of defendant Bernice was in the particular plaintiff from whom said money came. It also found that certain other personal property claimed by plaintiffs was not purchased in whole or in part with stolen moneys and held that defendants were the owners thereof, and that certain moneys claimed by plaintiffs belonged solely to defendant Bernice. The judgment further provided that no deficiency judgment could be had against defendant Bernice.

It is not contended, and could not be in the face of the stipulation, that the evidence did not support the court's conclusion that the stolen moneys went into the purchase of the property in question. However, the stipulation did not of course admit that the moneys were stolen. Also, as will be discussed later, defendant did not stipulate away his contention that where articles were purchased on an open account the court could not impress a lien on those articles nor require defendants to hold them in trust for plaintiffs for the amounts paid on said open account.

## 1. Sufficiency of Evidence to Show Wrongful Taking

█ The stipulations admit that defendant took certain funds, paid them to stores such as Gump's, Sloane's, and Magnin's, on personal merchandise accounts. But, contend defendants, Whitehead knew and authorized every withdrawal and authorized defendant to cash checks payable to the company. Defendant so testified in his deposition. Whitehead denied any such authorization and any knowledge of defendant's actions until February, 1948, when the Bank of America notified him of shortages in his account. Without detailing the evidence on this subject it is sufficient to say that at most, it is conflicting and to a great extent dependent upon the credibility of Whitehead or defendant. Defendant argues at length that Whitehead's testimony was not frank and that his testimony was conflicting, while that of Obler is clear and convincing. Such a situation, if it exists, was for the trial court to resolve. The trial court believed Whitehead, and resolved the conflict in his favor. There is ample evidence to support such conclusion.

## 2. Consolidation

█ The complaint in the case of Whitehead as an individual charges misappropriations prior to August 9, 1946. The corporation case covered those made thereafter. Defendants contend that as the plaintiffs and the dates of mis-

appropriation were different the cases could not be consolidated, pointing out that they were consolidated not merely for trial purposes but into one action. "An action may be severed and actions may be consolidated, in the discretion of the court, whenever it can be done without prejudice to a substantial right." (Code Civ. Proc., § 1048.) ". . . the trial court is vested with a discretion to consolidate . . . the exercise of such discretion will not be reviewed except in case of palpable abuse." (*Realty etc. Mtg. Co.* v. *Superior Court,* 165 Cal. 543, 547 [132 P. 1048].) We can see no prejudice to defendants' substantial rights in the consolidation of the two actions. Practically all of the contentions made by defendants have been answered adversely by the decisions. ■ The fact that evidence in the one case might not have been admissible in the other does not bar a consolidation. (See *Johnson* v. *Western Air Exp. Corp.,* 45 Cal. App.2d 614 [114 P.2d 688].) Nor does the fact that all the parties are not the same. (See *Aufdemkamp* v. *Pierce,* 4 Cal.App.2d 276 [40 P.2d 599]; *People* v. *Ocean Shore R., Inc.,* 22 Cal.App.2d 657 [72 P.2d 167].) In *McClure* v. *Donovan,* 33 Cal.2d 717 [205 P.2d 17], the consolidation was upheld of an action brought by a sister for the annulment of her brother's marriage with a proceeding to have the brother declared incompetent and a guardian of his person and estate appointed. ■ Here the Whitehead action was brought to follow the misappropriations from him into certain property, while the corporation action was brought to follow other misappropriations into other property. Both causes of action arose out of one series of transactions, namely, defendant's embezzlement from the corporation and its predecessor. One of the reasons that defendants objected to the consolidation is that thereby it was made easier for the plaintiffs to trace the stolen moneys than it would have been had the actions been separately tried. That very fact is a cogent one for upholding the action of the trial court. The consolidation eliminated the necessity of two trials instead of one. The fact that defendant was in San Quentin, urged by defendants as a reason the consolidation should not have been made, has no bearing on the subject. Defendants would have been equally handicapped by his absence from court whether the cases were tried singly or consolidated.

### 3. AMENDMENT OF COMPLAINT

■ In Whitehead's complaint he alleged that on July 15, 1946, defendant, with moneys stolen from plaintiffs, pur-

chased a pair of diamond earrings and a pair of diamond clips from a certain jeweler in New York for sums totaling $6,900. The proof showed that while these articles were purchased in 1946 when the business was that of Whitehead as an individual, $6,500 of the $6,900 purchase price was paid in 1947 after the formation of the corporation and from its funds. The trial court permitted the corporation to amend its complaint to allege that the purchase moneys belonged to the corporation. The court impressed a lien on the articles in favor of plaintiff corporation for $6,500 and interest. Defendants contend that the trial court abused its discretion in allowing the amendment. Their position is that had the cases not been consolidated and the Whitehead case been tried alone, judgment would have been rendered in favor of defendants because the moneys came from the corporation. Had the corporation case been tried alone, the evidence would not have been admissible as not being within the then issues. Therefore, say they, the court should not have permitted the amendment. Although in the corporation case, the matter was not pleaded, the evidence would have been admissible to show the transactions between the parties as bearing on the question of whether the moneys pleaded were stolen. The court on discovering the true facts would have had the authority to permit an amendment of the complaint to conform to the facts. Thus, the main objection to the amendment is that had it not been granted defendants would have escaped liability for moneys which the evidence shows defendant had stolen. We are not impressed with this argument. ■ The amendment alleges the entire purchase price of $6,900 was the corporation's moneys and the proof shows that of that sum $6,500 only belonged to it. That variance was immaterial. ■ Again in the amendment, plaintiff corporation alleges that the jewelry having been purchased with its money, the jewelry belongs to it. The court, however, instead of finding the title to the jewelry to be in the corporation, gave a lien on it for the $6,500. The fact that the relief did not equal the claim in the complaint did not make the allowance of the amendment improper. The greater includes the less. Defendants urge that as defendant was in San Quentin and the corporation had not originally urged that the purchase of the jewelry was in whole or in part with its money, defendants were not prepared on the subject. This is a rather peculiar contention to make in view of the fact that defendants stipulated at

the trial as to the purchase of the jewelry and the particular checks used by defendant in payment of the account. Moreover, defendants were put on notice by Whitehead's complaint that the matter was in issue. ■ "The law is settled that the trial court may permit an amendment to a complaint to conform to the proof at any stage of the trial even after submission of the cause unless the amendment introduces a new and independent cause of action." (*Sandvold* v. *Perrot*, 74 Cal.App.2d 344, 348 [168 P.2d 995].)

### 4. STATUTE OF LIMITATIONS

■ As a part of their contention of error in allowing the amendment, defendants claim that the statute of limitations had run against this claim, as the jewelry was purchased approximately four and a half years, and the money taken over three and a half years, before the amendment. These were actions based on defendant's fraud in misappropriating the moneys of the plaintiffs. The applicable statute of limitations is section 338, subdivision 4, Code of Civil Procedure, which requires the action to be brought within three years of the discovery by the aggrieved party of the "facts constituting the fraud . . ." (See *Dabney* v. *Philleo,* 38 Cal.2d 60, 65 [237 P.2d 648].) While the exact date of the discovery does not appear in the evidence, Whitehead testified that prior to February 1, 1948, he had no knowledge that defendant was using his or corporation funds for his own purposes. The amendment was made within three years of that time. Therefore the contention that the amendment should not have been allowed because the statute of limitations had run is not well founded.

### 5. EFFECT OF JUDGMENT AGAINST DEFENDANT BERNICE

■ As to the articles of personal property which the court found were paid for in part only with stolen funds, the court gave judgment against both defendants for the amount of the stolen funds and then declared a lien on the particular article or articles for the amount which went into the purchase price, with interest. For example, the court found that of the purchase price of a certain piano the sum of $1,509.43 was moneys embezzled from the corporation, and that said piano is now in the possession of defendant Bernice. It gave judgment in favor of the corporation for that sum against both defendants and declared a lien on the piano for that sum and interest. As to the real property, it found that it was paid for partially with stolen moneys and de-

clared a lien thereon for those moneys. By an amended judgment the court declared that in no event should there be any deficiency judgment against Bernice. Defendants contend that there could be no money judgment against her because the evidence shows that she knew nothing of the embezzlements, nor was any money judgment asked against her in the complaints. While the form of the judgment is artificial and could have been better drawn, the judgment actually does not give any money judgment against Bernice. It, in effect, merely gives plaintiffs a lien upon the particular articles for the amounts declared to have gone into their purchase price. Under the judgment no writ of execution could issue to collect any sums from defendant Bernice and no deficiency can be obtained from her in the event that the foreclosure of the particular lien fails to produce the entire amount due. The court, in effect, impressed a trust in favor of plaintiffs upon the articles to the extent to which plaintiffs' moneys went into them. Defendant Bernice is in the position of holding certain property which was purchased mainly with stolen money and is therefore holding said articles in trust for plaintiffs to the value of their money therein. Therefore, cases cited by defendants concerning debt actions do not apply. In effect, there was no personal judgment against Bernice.

### 6. EFFECT OF JUDGMENT AGAINST DEFENDANT

Defendant contends that no personal judgment could be obtained against him. Of course, plaintiffs could not have a judgment for the amounts stolen and also obtain the property purchased by those moneys. Defendant apparently believes such to be the effect of the judgment here. But it does not do so, and hence cases like *Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474 [111 P. 360], and *Hilborn* v. *Bonney*, 28 Cal.App. 789 [154 P. 26], which hold that the person wronged cannot be awarded both the property impressed with the trust and the moneys which purchased it, are not applicable. The court found that the entire purchase price of certain personal property was paid for with stolen moneys. As to those properties the court adjudged that they belonged to the particular plaintiff from whom the money was taken, and did not give judgment against either defendant for the stolen moneys which purchased them. As to the real property and the other articles of personal property which were paid for with stolen moneys in part only, it gave plaintiffs liens thereon. The effect of

the judgment as to defendant is that the money judgment is only in the event there is a deficiency after the lien is foreclosed. While this is not the exact language of the judgment it is the obvious effect thereof. Plaintiffs sued to impress a trust upon the property paid for with stolen money and also for an accounting. Under the complaint the court could have impressed such trust upon the properties to which the stolen moneys could be traced. It also could have given a personal judgment against defendant for the other moneys stolen by him as shown in the accounting. It did not do the latter, confining itself to doing the former. There is here no requirement of election. Plaintiffs sought and received, first, the property which the stolen moneys paid for in full (and no money judgment as to those moneys); second, a lien on the property not paid for in full by stolen moneys, for the amount which the stolen moneys contributed to the purchase price. If the foreclosure of the particular lien does not return the full amount stolen with interest, then the particular plaintiff is entitled to a judgment against defendant alone, for the deficiency.

### 7. INTEREST

Defendant Bernice contends that as she had no knowledge of the fact that the properties given her were paid for with stolen moneys, interest should not be chargeable against her equity in the properties on which liens were impressed. This contention is answered in *Brown* v. *New York Life Ins. Co.*, 152 F.2d 246, 250: "Appellant paid nothing for the insurance policies and as to her they were a gratuity. She is innocent of fraud perpetrated by herself, but as the lower court pointed out, even the widow of a trustee ex maleficio who has paid no consideration for the property purchased with misappropriated funds, or for their fruits, may not hold such property, or the fruits thereof, against the cestui que trust, who is the real owner. A third person, unless he or she has in good faith acquired for value without notice a subsequent interest, seeking any benefit resulting from the misappropriation, becomes a particeps criminis however innocent of the fraud in the beginning."

In *Estate of McLellan*, 8 Cal.2d 49 [63 P.2d 1120], where the trustees commingled trust funds with their own, the court said (pp. 54, 55): "Conceding that this transaction may have been actuated by the utmost good faith and that the trustees considered that they were complying with the terms of the will, it amounted to an unauthorized use of the trust

fund. . . . The court properly charged the trustees with interest at the statutory rate . . .''

*Elizalde* v. *Elizalde,* 137 Cal. 634 [66 P. 369, 70 P. 861], is not in point as there interest was held improper merely because no claim for it had been presented to the estate. Nor is *Title Ins. & Trust Co.* v. *Ingersoll, supra,* 158 Cal. 474, applicable for the reason (p. 489) : ''When the trustee, notwithstanding his failure to keep the trust funds separate from his own, is able to show that the mingled fund was well managed and wisely invested and what the profits are, or that the profits actually made do not exceed a certain amount, all the reasons for imposing a charge of interest exceeding such profits are wanting, and justice requires that the charge be limited to the equivalent of the gains actually made. It is conceded in this case that the defendant was economical, prudent, energetic and thrifty in the management and investment of these funds and his own in common.''

### 8. ITEMS PURCHASED ON OPEN ACCOUNT

Defendants contend that items purchased on open accounts and not paid for at time of purchase, but paid for later with stolen moneys, could not be impressed with a trust. It was defendant's practice to purchase rugs, furniture, jewelry and clothing from certain firms on open accounts running over a considerable period. Payments thereon were made by moneys which he admitted came from plaintiffs, plus moneys of his own. For example, his purchases at Sloane's ran to over $20,000, of which over $15,000 admittedly came from plaintiffs. The balance he paid out of his own money. There the payments from plaintiffs' money could be traced as equaling the purchase price of certain articles, thereby indicating that although the articles were ordered at a different time than the moneys were paid, the moneys were actually for their purchase price. The court held that such articles belonged to plaintiffs. Where the moneys could be traced as partially paying for specified articles the court impressed a lien for them on the articles. In addition, the court found that certain articles claimed by plaintiffs but to which plaintiffs' money could not be clearly traced were the property of defendant Bernice.　　Defendants contend that in purchasing the articles on an open account they were purchased on defendants' personal credit and the title thereto passed immediately to defendant Bernice, and no trust can be impressed upon them. Defendants cite *Lincoln* v. *Chamberlain,* 61 Cal.App. 399 [214 P. 1013],

and other resulting trust cases in support of their contention. They are not in point for the principle applicable here is that set forth in Restatement, Restitution, section 161, pages 650, 651, 652: "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises. . . . If one person misappropriates money of another and with it purchases property, the other can at his option either enforce an equitable lien upon the property so acquired, holding the wrongdoer personally liable for the balance, if any, or enforce a constructive trust of the property. . . . d. Enforcement against transferee. If property which is subject to an equitable lien is transferred to a third person who has notice of the equitable lien *or who does not give value,* the equitable lien can be enforced against the property in the hands of the third person." (Emphasis added: see *Dabney* v. *Philleo, supra,* 38 Cal.2d 60.) Payments were made on the articles selected by the court with defendants' own funds, but most of the payments were made with stolen money. For example, over $11,166 of embezzled funds found their way into one of the accounts in the years 1946 and 1947. It was defendants' duty to segregate, if they could, their funds that went into this account. They did not even try. "Appellant claims that the deposits of the embezzler from which the premiums on the insurance policies were paid were in large part made up of the monthly salaries paid by the banking corporation for services rendered while Edward N. Brown was engaged in his embezzlement activities. But at the very moment any month's salary was about to be paid, he, as an officer or trust employee of the Bank, should have advised the Bank of his embezzlements. Failing in such duty, the salary moneys paid him were infected by a trust of the whole thereof to the paying bank. The transaction might otherwise be described as the receipt by Edward N. Brown of moneys not due him, obtained under false pretenses of his performance of his trust obligations to his employer." (*Brown* v. *New York Life Ins. Co., supra,* 152 F.2d 246, 250.) " 'It is quite true that the burden of proof was upon plaintiff to establish the trust but, when proof of the fiduciary relationship of the parties was made, the betrayal of the trust, the probable amount of the embezzlements shown, a *prima facie* case was presented, and the burden was then on Meyers to show, if he could, that his money, and not that of the plain-

tiff, paid for the properties in whole or in part . . .' "
(*Tretheway* v. *Tretheway*, 16 Cal.2d 133, 140 [104 P.2d
1033].)

*Brodie* v. *Barnes*, 56 Cal.App.2d 315 [132 P.2d 595], is
distinguishable from our case for the reason that there the
defendants met the burden of showing what portion of the
insurance policy had been paid for with legitimate funds.

It would be a strange rule of law that would hold, as
contended for by defendants, that a person embezzling funds
to purchase certain properties, could first purchase them on
credit, give them to his wife, and then pay for them with
the stolen funds and thereby preclude the wronged party
from having a trust or lien impressed on the articles pur-
chased with the stolen money.

### 9. ELECTRIC KITCHEN APPLIANCE COMPANY

In his cross-complaint against Whitehead defendant
alleged that as part of his employment and in consideration
of his services in promotion of the Whitehead heater, White-
head had promised defendant a one-fourth interest in Electric
Kitchen Appliance Company. The court found against such
claim. Defendant contends this finding is not supported.
Whitehead denied that there was any such agreement. De-
fendant makes a rather involved argument based on certain
checks admittedly signed by Whitehead having to do with
payments of income tax which defendant contends were for
tax evasion purposes, and his contention that the court should
have disbelieved Whitehead's testimony and believed defend-
ant's. The credibility of the witnesses is a matter entirely
in the hands of the trial court.

### 10. THE $10,000 LOAN

In his cross-complaint defendant contended he loaned
the corporation $10,000. The court found against him on
this issue. In the corporation minutes of April 12, 1948,
appears a statement that on or about February 17, 1948,
the corporation had received certain loans from certain per-
sons, including $10,000 from defendant, and that the com-
pany would repay these loans on the same pro rata basis
as it would pay its general creditors. In view of the fact
that defendant's misappropriations had been discovered prior
to this time, it is a bit difficult to understand this loan.
There is no explanation in the record. In their brief plain-
tiffs content themselves with saying that the amounts of
defendant's embezzlements over those for which the court
impressed trusts on the real and personal property, more

than offset the amount of this loan and interest. In view of the record the finding is wrong. The trial court should have found that such loan was made. Inasmuch as plaintiffs asked for an accounting of all sums misappropriated and the evidence shows clearly that the amounts misappropriated over and above the sums which were traced into the real and personal property exceed $20,000, there need be no change in the judgment. Defendant admitted that $16,-607.50 of plaintiffs' money went to I. Magnin alone, and no articles purchased from that store are included in the judgment. The $10,000 and interest thereon can be offset pro tanto against the additional embezzled moneys. As we have the power to make findings (Code Civ. Proc., § 956a) it will not be necessary to remand the case. The findings are amended to conform with our views herein expressed.

The amended judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 23, 1952.