**FIBERCHEM, INC., Appellee,**

v.

**GENERAL PLASTICS CORPORA-
TION et al., Appellants.**

No. 72-1902.

United States Court of Appeals,
Ninth Circuit.

April 9, 1974.

Lawrence R. Resnick (argued), Fulop, Rolston, Burns & McKittrick, Beverly Hills, Cal., Rex M. Walker, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for appellants.

George M. Hartung, Jr. (argued), Rodney J. Waldbaum, Lesourd, Patten, Fleming & Hartung, Seattle, Wash., for appellee.

Before GOODWIN and SNEED, Circuit Judges, and BURNS,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Fiberchem, the holder of an exclusive sales representation agreement with General Plastics, a now-defunct manufacturer, sued Rowland for commissions on sales by Rowland to Boeing after

---

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

Rowland had purchased from General certain assets including General's purchase orders. Rowland appeals the resulting judgment in favor of Fiberchem.

■ Rowland contends that when it purchased selected assets of General, including the right to fill its purchase orders and to receive the purchase price thereon, Rowland expressly refused to become obligated to pay sales commissions to Fiberchem on these orders. Fiberchem was not a party to the dealings between General and Rowland. We hold that, in spite of Rowland's disclaimer, because Rowland knew of the sales-commission agreement, it could not purchase the order file free from its inherent liabilities—the obligation to pay sales commissions. We affirm the judgment.

Fiberchem is conceded to have been General's exclusive sales representative within the state of Washington. Under the terms of their agreement, Fiberchem was to receive a commission on sales of General's products within the state. Through Fiberchem's efforts, Boeing awarded General a contract for the sale of various plastic components for its airplanes. Subsequently, Boeing issued several add-on orders.

In 1969 General sold a portion of its business to Rowland, assigning to Rowland the then outstanding purchase orders from Boeing. The agreement specifically disclaimed any assumption of liability by Rowland for sales commissions. Following this purchase, Rowland delivered products to Boeing upon purchase orders assigned by General as well as upon add-on purchase orders issued by Boeing directly to Rowland for similar parts. On July 24, 1970, Rowland advised Fiberchem that it denied any liability to it, and, with full reservation of its denial of liability, terminated the manufacturer's representation agreement effective August 23, 1970.

Meanwhile, General had filed for bankruptcy. The referee in bankruptcy entered an order, enjoining and staying all actions against General. For this reason, Fiberchem is not now pursuing its claim against General for unpaid commissions earned on sales by General to Boeing prior to its sale to Rowland. Fiberchem's claim against Rowland is limited to commissions earned upon deliveries made after the sale by General to Rowland.

The district court found that Fiberchem had earned commissions both upon the purchase orders assigned to Rowland and upon add-on orders for the same parts issued to Rowland by Boeing. The court held Rowland liable to Fiberchem for these commissions.

Rowland argues that it had no agreement with Fiberchem and could not become obligated to pay commissions to it in the absence of an express or implied agreement to do so. Rowland also contends that even if it is held liable to pay commissions on specific purchase orders assigned to Rowland by General, it is not liable to pay commissions on purchase orders issued after the sale and certainly not on purchase orders issued after an express termination of the sales commission agreement, pursuant to its own terms.

■ We discuss first Rowland's argument that it is not liable at all for commissions to Fiberchem. Although there is some dispute whether or not an assignee for value takes his claim free from the equities of third persons against the assignor, of which the assignee had no notice, there is no dispute that the assignee takes his claim subject to the equities of third persons against the assigned right where he has knowledge of such equities. See 4 A. Corbin, Contracts § 900, at 606–08 (1951); 3 S. Williston, Contracts § 438, at 254 (1960); Note, Latent Equities, 20 U. Chi.L.Rev. 692 (1953). For example, in Lasser v. Philadelphia National Bank, 321 Pa. 189, 183 A. 791 (1936), the court held that an assignee of a distributor who sold goods and billed customers in his own name but was in fact the agent of the manufacturer took free of the manufacturer's latent equity, but the court so held only because the assignee

was unaware of the manufacturer's equity.

Here, it is undisputed that Rowland purchased assets from General with full knowledge of Fiberchem's right to commissions. Rowland had ample opportunity to negotiate with General for a purchase price that would take into account Rowland's possible liability to Fiberchem. *Cf.* Savings Bank v. Creswell, 100 U.S. 630, 643, 25 L.Ed. 713 (1880). In fact, there is some evidence in the record suggesting that the purchase price actually was determined with an eye toward such liability. Moreover, the clause in the General-Rowland contract in which Rowland disclaimed liability for sales commissions, though ineffective here against the claims of Fiberchem, may well permit Rowland to seek indemnification from General. Hence, we conclude that Rowland is liable to Fiberchem for commissions on the outstanding purchase orders assigned to it by General.[1]

■ Rowland's other contention is that, even if it must pay commissions on the outstanding purchase orders, it should not be forced to pay commissions on purchase orders issued by Boeing after the sale by General Plastics, much less on purchase orders issued after Rowland had terminated whatever was left of the agreement with Fiberchem. The agreement between Fiberchem and General Plastics provided for termination by either party upon thirty days' notice. It also contained a clause saying:

"  * * * After any such termination neither party shall be under any liability to the other, except that Company shall be liable for commissions

earned prior to such  .* * * termination."

While the agreement does not say whether commissions on add-on orders issued after termination are considered to have been "earned prior to such * * * termination," there is language elsewhere purporting to define commissions as "earned" only when the customer pays for the goods. No one appears to have argued that this clause should be read literally, as such a reading would have wiped out commissions obviously "earned" in the usual sense of the word.

Given this kind of contract to construe, the trial judge properly turned to general principles of law applicable to such transactions and particularly to the opinion in Poggi v. Tool Research & Engineering Corp., 75 Wash.2d 356, 451 P. 2d 296 (1969). In *Poggi*, the Washington court held that termination of a manufacturer's representation agreement does not cut off the agent's rights to commissions on orders for which he was the efficient procuring cause, even though the orders had not yet been received in final form at the time of the termination. We recognize that *Poggi* is factually distinguishable from this case, but agree with the trial court that it states the rule of law applicable here. *See also* Zelensky v. Viking Equipment Co., 70 Wash.2d 78, 422 P.2d 293 (1966). *See generally* J. & B. Motors, Inc. v. Margolis, 75 Ariz. 392, 257 P.2d 588, 592 (1953); Zinn v. Ex-Cell-O Corp., 24 Cal.2d 290, 149 P.2d 177, 180–181 (1944); Wise v. Reeve Electronics, Inc., 183 Cal.App.2d 41, 6 Cal.Rptr. 587 (2d Dist. 1960); Reed v. Kurdziel, 352 Mich. 287, 89 N.W.2d 479 (1958); Leach

1. This same result perhaps could be reached on the theory that Fiberchem, as the procuring cause of the sales to Boeing, has an equitable lien on the proceeds of these sales to the extent of the commissions earned. *See* Mitchell v. Bowman, 123 F.2d 445, 447 (10th Cir. 1941). This equitable lien could be enforced against an assignee of the purchase orders with notice of the existence of the commission agreement (Rowland), as

well as against the original contractor (General). *See* Jud Whitehead Heater Co. v. Obler, 111 Cal.App.2d 861, 245 P.2d 608, 616 (1st Dist. 1952). *See generally* Restatement of Restitution § 161 (1937). However, since the theory of equitable liens was never raised either here or in the district court, we are reluctant to base our decision upon it.

Corp. v. Turner, 390 P.2d 515, 517–518 (Okl.1964).

Here, the trial court found that Fiberchem was the efficient procuring cause for the orders on which the commission claims have been made. Although this finding was contested, there is ample evidence to support it, and it is not clearly erroneous.

Rather than affirm the judgment, the dissent would have us remand to the district court for express findings on the question of unjust enrichment. We think that this step is unnecessary because, though the findings and conclusions do not specifically address the unjust enrichment issue, statements made by the district judge leave little doubt that he considered and adopted the theory. For example, he observed, " * * * they [Rowland] actually stepped in and got a gratuity * * *." Later, he said, " * * * that would be quite a windfall if you [Rowland] could [defeat the claims of Fiberchem], and that is what it amounts to, is a windfall." These and other remarks strongly suggest that a remand would be both time-consuming and unlikely to produce a different result.

The judgment is affirmed.

SNEED, Circuit Judge (dissenting):

I respectfully dissent.

In holding that Rowland is liable to Fiberchem for sales commissions on general and follow-up orders, the majority draws heavily from two lines of authority. The first, the "latent equity" analysis, is viewed by the majority as standing for the proposition that "the assignee takes his claim subject to the equities of third persons against the as-

signed right where he has knowledge of such equities." In my opinion this proposition is properly applied only in situations where a third party asserts a claim to the funds also claimed by the assignee. *See generally*, Comment, "Latent Equities," 20 U.Chi.L.Rev. 692 (1953). A "latent equity" claim may be derived from a prior assignment, trust principles, agency law, the doctrine of subrogation, or some other source, but it is invariably recognized only in situations where a third party is claiming specific funds also claimed by an assignee.[1]

In this case Fiberchem is not asserting a claim against the particular funds to which Rowland became entitled by virtue of the assignment of rights and delegation of duties with respect to the Boeing purchase orders; instead it is arguing that, since it procured the orders and because General Plastics can not now pay, Rowland should pay the commissions for which General Plastics is the primary obligor. Fiberchem's position in this litigation does not significantly differ from that of any other general creditor of General Plastics whose goods and services contributed to the orders which it transferred to Rowland.

I have been unable to find any authority in Washington law or elsewhere to justify treating Fiberchem as a lien holder absent a showing that Rowland was unjustly enriched by Fiberchem. The broad language of the Restatement of Restitution, § 161, justifies imposing a lien under such circumstances.[2] As I shall point out, this affords little comfort to Fiberchem because it has not established in this case that Rowland has been unjustly enriched.

1. *See, e. g.*, Brown v. Equitable Life Assurance Society, 75 Minn. 412, 78 N.W. 103 (1899) (assignment absolute in form but in fact merely intended as security for a loan) ; Levenbaum v. Hanover Trust Co., 253 Mass. 19, 148 N.E. 227 (1925) (preferential payment by insolvent debtor) ; Noland v. Law, 170 S.C. 345, 170 S.E. 439 (1933) (trustee assigned chose to a purchaser for value without notice) ; Lasser v. Philadelphia Na-

tional Bank, 321 Pa. 189, 183 A. 791 (1936) (assignment by agent of funds held on behalf of principal).

2. Section 161 of the Restatement provides : Where property of one person can by a proceeding in equity be reached as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises.

The second line of authority from which my brothers draw support is Poggi v. Tool Research & Engineering Corp., 75 Wash.2d 356, 451 P.2d 296 (1969), a case which is wholly distinguishable from the present controversy. As my brothers indicate, *Poggi* holds that "termination of a manufacturer's representation agreement does not cut off the agent's rights to commissions on orders for which he was the efficient procuring cause, even though the orders had not yet been received in final form at the time of the termination." If Fiberchem had brought suit against General Plastics rather than Rowland, *Poggi* would be controlling. *Poggi,* however, merely holds that when one has substantially performed his contract he can recover from the other party thereto that which such party promised. But here Fiberchem is not suing that party. It is suing an assignee of such party who expressly disclaimed any liability to the performing party. I know of no authority that makes such a disclaimer contrary to public policy. Nor is there any evidence to suggest that General Plastics' assignment was a fraudulent conveyance or a preference in bankruptcy.

Inasmuch as there is nothing in the record inconsistent with Rowland's disclaimer, it follows that recovery can not be based on an implied in fact contract. "Contracts implied in fact arise from facts and circumstances showing a mutual consent and intention to contract." Chandler v. Washington Toll Bridge Authority, 17 Wash.2d 591, 137 P.2d 97, 101 (1943).

This brings me to what I view as the fundamental issue of this case: Was Rowland unjustly enriched? Since the case was not argued along this line, the district court made no express findings on this issue. Resolution of the quasi-contractual issue on appeal is further complicated by the incompleteness of the Record on the question of unjust enrichment. While it is clear that the parties to the sale of General Plastics' assets assigned only $1,000 of the $350,000 purchase price to the purchase orders and other intangible assets, their action may be justified by a number of business purposes and, at the very least, is inconclusive on the question of unjust enrichment.

I would therefore remand to the district court for express findings on the question of unjust enrichment. On remand, the district court should also consider the decision of the Washington Supreme Court in Chandler v. Washington Toll Bridge Authority, 17 Wash.2d 591, 137 P.2d 97, 102 (1943), wherein the following language from Cascaden v. Magryta, 247 Mich. 267, 225 N.W. 511, 512 (1929), was quoted with approval:

> The courts, however, employ the (quasi contract) fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another.

The possibility that *Chandler,* as a matter of law, prevents the application of quasi-contractual principles to the present case should be considered. As *Chandler* makes clear, recovery under a theory of quasi-contract requires the receipt of a benefit the retention of which would be unjust. Mere receipt of a benefit is not enough.

In sum, I do not believe that the authorities relied upon by the majority provide support for its position. A remand to consider the question of unjust enrichment would be a more appropriate disposition of this case. I would reverse and so remand.