[No. 28933. Department Two. April 26, 1943.]

ELBERT M. CHANDLER, *Appellant,* v. WASHINGTON TOLL BRIDGE AUTHORITY *et al., Respondents.*[1]

[1]Reported in 137 P. (2d) 97.

*Charles T. Peterson,* for appellant.

*The Attorney General, R. A. Moen,* and *Harold A. Pebbles, Assistants,* for respondents.

BEALS, J.—Elbert M. Chandler instituted this action against Washington toll bridge authority, demanding

judgment for over eighty-two thousand dollars, basing his demand upon services which he performed by way of the preparation of estimates, surveys, maps, and other items which he prepared prior to 1936 in connection with the then proposed construction of a toll bridge across that portion of Puget sound known as the "Tacoma narrows." In his complaint, plaintiff alleged that the material which he prepared was adopted by the defendant, an administrative agency of the state of Washington, to its profit and beneficial use, at and after the time defendant applied to and received from the Federal government loans and grants with which to finance the construction of the structure known as the Tacoma narrows bridge.

The defendant demurred to plaintiff's complaint upon all the statutory grounds. After extensive argument, the trial court sustained defendant's demurrer, apparently upon the ground that the complaint failed to state facts sufficient to constitute a cause of action, and, upon plaintiff's refusal to plead further, judgment was entered dismissing the action with prejudice, from which plaintiff has appealed.

Error is assigned upon the entry of the order sustaining the demurrer, and upon the entry of judgment of dismissal.

The facts upon which appellant's claim is based may be briefly stated as follows: By Laws of 1929, chapter 62, p. 65, the legislature granted to three individuals a franchise authorizing them to construct, maintain, and operate a bridge across the narrows, subject to approval by the United States war department of the plans and specifications therefor. The act provided that the franchise would terminate unless construction of the bridge was commenced within two years. By Laws of 1931, chapter 93, p. 270, the franchise was extended, that act also containing a provision that the

franchise would terminate if construction was not commenced within two years of the effective date of the act. As the construction of the bridge was not commenced within the time limitation, the franchise last referred to expired by limitation, June 10, 1933.

Prior to that date, however, the holders of the franchise entered into a contract with appellant (a copy of which was attached to appellant's complaint), whereby appellant agreed to make all surveys, soundings, etc., necessary for the preparation of plans for the bridge construction, and also agreed to prepare, at his own expense, on or before January 31, 1933, an application to the war department for permission to build the bridge. The contract provided that if the war department refused to grant a permit the agreement should end. The franchise holders also reserved to themselves the right to terminate the contract. The parties further agreed that appellant would, at his own cost, prepare data which should be presented to the reconstruction finance corporation (hereinafter referred to as RFC), an agency of the Federal government, to be used as a basis for obtaining Federal funds to be used in financing the project; that appellant would make with the Federal agency referred to, all necessary financial arrangements, and, upon procuring an agreement from the agency to finance the project, would commence construction of the bridge by June 1, 1933; and that if this was not accomplished the holders of the franchise might terminate the contract. Among other provisions, the agreement contained the following:

"6. The builder [appellant] shall and will promptly supply the franchise holders with true and correct copies of the originals of all information, data, estimates, plans, correspondence, papers and documents of every kind, nature and description. This covenant is independent of the success or failure of the project and

is intended to assure to the franchise holders and any one else who may be interested with them or in a public way, that all information of value relative to the construction of a highway across the Narrows may be available for any future use. If, for any reason, this contract shall be terminated, then the builder shall and will deliver to the original franchise holders all original documents, estimates, plans, or information of every kind which may have come into his hands."

By this portion of the agreement, appellant in effect agreed, by an independent covenant, that, if work on the bridge was not commenced within the period specified in the contract, the public should be entitled to the benefit of any of the work which he should have performed by way of preparation of plans, specifications, or similar data.

Appellant alleged that he secured the necessary permit from the war department under date January 17, 1933 (attaching a copy of this permit to the complaint), and that he, a few days later, prepared and filed with the RFC an application for a loan, setting forth all data necessary to afford the basis for a loan by the Federal agency.

In his complaint, appellant alleged that the RFC found that the project was eligible for a loan, but this allegation is apparently contradicted by two letters from an officer of the agency, dated, respectively, July 10 and July 11, 1933, which appellant attached to his complaint as exhibits G-1 and G-2. In any event, while the matter was pending before the RFC, the public works administration (hereinafter referred to as PWA), June 16, 1933, assumed the functions of the RFC relative to the advancement of Federal funds in aid of such projects.

Pursuant to Laws of 1931, chapter 93, p. 270, the franchise thereby granted expired by statutory limitation June 10, 1933, no actual construction of the project having been commenced on or prior to that date.

November 6, 1933, by a supplemental agreement between appellant and the franchise holders, the latter purported to extend to December 31, 1934, the time for "adequately financing the project." At the date of the execution of this supplemental agreement, the franchise had expired by statutory limitation, as above set forth.

By chapter 18, p. 50, enacted at the special session of the legislature in 1933 (effective January 13, 1934), counties were authorized to apply for Federal loans to be used in the construction of toll bridges. January 16, 1934, appellant entered into a contract with Pierce county, acting through its county commissioners, the county then proposing to erect a bridge over the narrows, whereby the county employed appellant in the capacity of chief engineer, to make surveys and tests and provide plans and specifications for the proposed bridge. Appellant was also to supervise the construction of the bridge, and to receive for his services a fee equal to ten per cent of the cost. The contract provided that, in the event the county should be unable to finance the construction, the agreement might be declared at an end, without any liability to appellant for moneys expended or services rendered.

While the matter does not appear to be of importance here, it should be noted that, by Laws of 1935, chapter 181, p. 850, the legislature authorized the chairman of the board of Pierce county commissioners and two other persons, or their successors, to construct, maintain, and operate a bridge across the narrows. The act provided that the authority therein granted should cease unless the actual construction of the bridge authorized by the act was commenced within two years from the effective date of the act. It does not appear that anything was ever accomplished pursuant to the authority above referred to.

In the course of the various employments above referred to, appellant organized a corporation under the title of Tacoma Narrows Bridge Company, which corporation was in fact the *alter ego* of appellant. By the agreement between appellant and the county, the corporation last referred to assigned to Pierce county all its rights, privileges, and contracts in connection with the proposed project.

Pursuant to his contract with the county, appellant prepared further data, and went to Washington, D. C., where he appeared before the Federal agency having authority to advance Federal funds in aid of such projects. September 19, 1934, the PWA, the Federal agency then having charge of such matters, notified appellant that the bridge project was eligible for a loan and grant, but that no funds were then available. The project, however, was placed upon a preferred list, where it remained from September, 1934, to April 1, 1937.

By Laws of 1937, chapter 173, p. 654 (Rem. Rev. Stat. (Sup.), § 6524-1 [P. C. § 2697-502] *et seq.*), the legislature established "Washington Toll Bridge Authority," which act was approved by the governor March 16, 1937. By § 3 of this act, the authority (respondent) was empowered to determine the matter of the practicability and the necessity of any proposed toll bridge, to provide for the construction of approved toll bridges, and to accept Federal funds for financing such construction. By Laws of 1937, chapter 187, p. 728 (Rem. Rev. Stat. (Sup.), § 6450-1 [P. C. § 2697-421] *et seq.*), there was enacted the "Washington State Aid Highway Act," and by § 69 of this act, chapter 18, Laws of 1933, Ex. Ses., p. 50, above referred to, empowering counties to build toll bridges to be paid for by special fund bonds or Federal grants, was repealed.

In his complaint, appellant alleged that Pierce county,

after the effective date of chapter 173, p. 654, Laws of 1937, requested respondent to assume sponsorship of the proposed toll bridge, and that respondent did adopt the project and filed with the appropriate Federal agency a revised application for a loan and grant, basing the application upon the surveys, maps, soundings, and other data prepared by appellant under his contracts with Pierce county and the franchise holders hereinabove referred to. Appellant further alleged that, June 25, 1938, the PWA authorized a grant in aid of the project, and that, August 8, 1938, the RFC authorized a loan to respondent for the construction of the bridge.

Appellant further alleged that Pierce county offered, and respondent accepted, all the data and information prepared by appellant for Pierce county pursuant to his contract with the county; that respondent assumed the duties, obligations, and liabilities of Pierce county with respect to the bridge project; and that respondent adopted appellant's records, representations, and data, using the same to its own advantage, profit, and benefit. Appellant further alleged that his efforts contributed materially to respondent's campaign on behalf of the project, and made it possible for respondent to obtain Federal funds in aid of the construction of the bridge.

Appellant then asked judgment for the amount above mentioned as the value of the services which he had performed, and of which he alleges respondent received the benefit, alleging that, by its acceptance of the data and its use thereof, respondent became liable to appellant for the amount which he has demanded.

August 29, 1939, appellant filed with the state auditor his claim against respondent, which was rejected.

Appellant's activities may be summarized as follows: Between November 14, 1932, and June 10, 1933, he rendered services, doubtless involving much labor and

expense, under a contract with certain franchise holders, by the terms of which contract he expressly waived all claim to compensation for his services and expenses unless the franchise was maintained by the commencement of the construction of the bridge within the time limited by the act. Between June 10, 1933, and January 16, 1934, anything plaintiff did was without reliance upon any valid contract. From January 16, 1934, until his work ceased in September, 1935, appellant was acting pursuant to a contract with the board of county commissioners, by the terms of which he would be compensated upon a contingent basis. No actual construction work was ever commenced by any agency with whom appellant had a contract.

Appellant relies upon his allegation to the effect that respondent adopted to its use and benefit the information, estimates, plans, and data which he had prepared, and which were used in the preparation of respondent's application for Federal funds, which application was granted, and resulted in the construction of the bridge. Appellant contends that respondent unjustly enriched itself by the use of his data, and obtained the benefit of the work which appellant had performed by way of explaining to the various Federal agencies the feasibility, practicability, and desirability of the construction of the narrows bridge, and that, by reason of the premises, respondent is liable to appellant in the amount for which appellant asked for judgment.

Appellant, in seeking to recover judgment against respondent, relies solely upon the services which he performed pursuant to his contracts with the first franchise holders, under the act of 1929, and with Pierce county, under chapter 18, Laws of 1933, Ex. Ses. Respondent, Washington toll bridge authority, was, of course, not in existence prior to the effective date of chapter 173, Laws of 1937, and appellant does not, in

his complaint, allege that he performed any actual services subsequent to the effective date of the last mentioned act. He relies solely upon the allegations in his complaint to the effect that respondent adopted and used his work, performed under contracts with others, in obtaining the Federal funds used in building the bridge.

■ Generally speaking, the law recognizes two classes of implied contracts: those implied in fact, and others implied in law. Those falling within the latter classification are generally termed quasi contracts. 17 C. J. S. 317, § 4. Contracts implied in fact arise from facts and circumstances showing a mutual consent and intention to contract. *Troyer v. Fox,* 162 Wash. 537, 298 Pac. 733, 77 A. L. R. 1132. Quasi contracts arise from an implied legal duty or obligation, and are not based on a contract between the parties, or any consent or agreement. *Bicknell v. Garrett,* 1 Wn. (2d) 564, 96 P. (2d) 592, 126 A. L. R. 258; *King County v. Odman,* 8 Wn. (2d) 32, 111 P. (2d) 228, 133 A. L. R. 1440.

Appellant does not rely upon any contract implied in fact. Indeed, his complaint contains no allegations which could be construed as alleging the existence of any such contract. None of his allegations warrants even an implication that appellant rendered services at respondent's request, or rendered any such services with any idea that respondent would pay him therefor. His sole contention is that the allegations of his complaint show that respondent is liable to him upon a quasi contract.

In the case of *Byram v. Thurston County,* 141 Wash. 28, 251 Pac. 103, 252 Pac. 943, this court, in discussing the nature of quasi contracts, said:

"A contract implied in law is an obligation imposed upon a person by the law, not in pursuance of his intention and agreement, either express or implied, but found against his will and design, because the circum-

stances between the parties are such as to render it just that one should have a right and the other a corresponding liability similar to that which would arise from a contract between them. This kind of obligation rests upon the principle that whatsoever it is certain a man ought to do, that the law will suppose him to have promised. to do."

In the case of *Edwards v. Surety Finance Co.*, 176 Wash. 534, 30 P. (2d) 225, concerning the same class of contracts, we. said:

"In addition to such contracts as draw their efficacy from the consent of the parties, there is a class of legal obligations which, though of a contractual nature, are not based on contract or consent. These are sometimes spoken of as contracts implied in law, but are usually referred to as quasi, or constructive, contracts. For the purpose of applying the contractual remedy of *assumpsit*, the law imposes upon such obligation a fictitious promise to pay. The liability upon an obligation of this kind arises purely upon an implication of law, independent of agreement or intention. The law in such cases establishes a duty which may be contrary to the intention of either one, or both, of the parties. 6 R. C. L., p. 588, § 7."

The mere fact that respondent has been benefited or enriched by the work which appellant performed is not in itself sufficient to justify a recovery by appellant in the case at bar. Before a recovery may be had in such a case, it must appear that not only was the party sought to be held enriched, but the enrichment must be unjust.

"Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." Restatement of the Law of Restitution, p. 13, § 1 (c).

"It is of the essence of quasi contractual obligation that the retention of the benefit received by the defendant would be unjust. In a large proportion of the reported cases the presence of this element of obligation is the question in dispute." Woodward on Quasi Contracts, p. 9, § 9.

Typical factual situations in actions based upon quasi contracts are listed in 13 C. J. 244, § 10.

In the case of *Cascaden v. Magryta*, 247 Mich. 267, 225 N. W. 511, the supreme court of Michigan said:

"In order to afford the remedy demanded by exact justice and adjust such remedy to a cause of action, the law sometimes indulges in the fiction of a *quasi* or constructive contract, with an implied obligation to pay for benefits received. The courts, however, employ the fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another."

Undoubtedly appellant, at the cost of time and money, prepared much necessary and valuable data in connection with the proposed construction of the narrows bridge, with particular regard to the securing of Federal aid. Appellant also furnished to different Federal agencies information of a more general nature in regard to the necessity for the bridge, and its usefulness both to the state and Federal governments. By appellant's time and efforts these different agencies were furnished this information in advance of respondent's creation, and it may be assumed that, when respondent took over the work, it gained considerable advantage because of appellant's prior activities. In this connection, the word *benefit* has been defined as follows:

"A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds

to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage." Restatement of the Law of Restitution, p. 12, § 1 (b).

The question, then, to be here determined is whether the benefit or enrichment which accrued to respondent as the result of appellant's labor was an unjust enrichment for which appellant is entitled to compensation from respondent.

In Restatement of the Law of Restitution, p. 461, § 112, the rule is stated as follows:

"A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons."

Cases falling within the exception to' this rule generally occur when the person performs the noncontractual duty of another to supply necessaries to a third person, or performs another's duty to a third person in an emergency. The rule has also been applied when it has appeared that one has performed another's duty to the public, or has preserved another's life, health, property, or credit. In all of these instances, however, it must appear that the service performed was rendered with intent to ask remuneration therefor.

Manifestly, appellant cannot contend that he performed any duty which rested upon respondent, or that in acting as he did he expected remuneration from respondent, because, at the time appellant acted, respondent had no existence.

Appellant's contract with the franchise holders above referred to contained, as an independent covenant (above quoted), an express waiver in favor not only

of the franchise holders, but of "anyone else who may be interested with them or in a public way" in the venture.

In 2 Williston on Contracts, p. 1061, § 364A, is found the following:

"In the words of the Restatement of Contracts, 'There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or unenforceable at the time of its formation, or subsequently ceases to be binding in whole or in part because of impossibility, illegality, or the present or prospective failure of the promisee to perform a return promise which was the consideration for the promisor's promise, the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation.' "

It would seem, then, that appellant's independent covenant above referred to is binding upon him, regardless of the conditional or contingent nature of the contract between appellant and the franchise holders. Respondent is a party interested in a public way in the subject matter of that contract, and may avail itself of the protection afforded by the covenant referred to.

█ A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract. 71 C. J. 81, § 42; 17 C. J. S., p. 321; *Schneider v. Allis-Chalmers Mfg. Co.*, 196 Wis. 56, 219 N. W. 370; *Federal Royalty Co. v. Knox*, 114 F. (2d) 78.

██ In so far as appellant seeks to recover for services rendered by him pursuant to his contract with Pierce county, which contract was contingent upon the county's ability to finance the project, any benefits which resulted to respondent were purely incidental. Clearly, appellant was working upon a proposition

which was contingent upon the county's ability to procure the necessary funds. If the county was successful in this, appellant stood to gain largely, both in money and credit.

In 28 R. C. L., p. 691, § 27, is found the following:

"So where work and labor is performed under a contract, suit must be between the parties to the contract; and third persons, though benefited by the work, cannot be sued on an implied assumpsit to pay for that benefit, because an implied undertaking cannot arise, as against one benefited by work performed, when the work was done under a special contract with other persons."

In Keener on Quasi Contracts, p. 361, the rule is stated as follows:

"If a plaintiff has in fact received the equivalent which he expected in exchange for an act done by him, the fact that incidentally some one else has also derived a benefit should not give him a cause of action. In such a case it cannot properly be said that there is an unjust enrichment on the part of the defendant at his expense, since he has received an equivalent which he regarded as ample when he did the act."

When appellant contracted with the franchise holders, and later with the county, it must be assumed that he deemed the chance of procuring a considerable reward a sufficient basis for his agreement to perform the work which he undertook. The contingency having failed, appellant cannot now proceed against respondent, a creature of the legislature which was not even in existence at the time appellant performed the services for which he now seeks recovery.

Appellant alleges in his complaint that respondent, at the request of Pierce county, assumed the sponsorship of the bridge project, but the mere acceptance of sponsorship of the project would not render respondent obligated to appellant, nor afford any basis for a

contention that respondent assumed the contingent contract which had been entered into by appellant and the county.

Appellant argues that, because Laws of 1937, chapter 187, p. 777, § 69, which repealed chapter 18, p. 50, Laws of 1933, Ex. Ses. (pursuant to which appellant entered into the contract with Pierce county), contained the following saving clause: "That franchises, rights or obligations in existence at the time of the taking effect of this act be and the same are hereby preserved," his rights under the contract with Pierce county in some manner survive to his benefit in this action.

Whether or not any right or advantage in appellant's favor survive as against Pierce county, the other party to the contract, need not here be considered. Any such survival would not benefit appellant in his claim against respondent. In any event, the contract between appellant and Pierce county had completely failed by reason of the fact that no money had ever been procured with which to construct the bridge. His contract provided:

"In the event that the county shall be unable to finance the construction of said bridge through the issuance and sale of such revenue bonds, aided by grants of money from the United States and the state of Washington, that the county may declare this agreement at an end, and shall be under no obligation or liability whatsoever to the party of the second part for moneys expended or disbursed or for services rendered."

Upon repeal of the statute pursuant to which the county was proceeding in an endeavor to procure Federal aid, it became impossible for either party to perform the contract. Appellant argues that, since performance was rendered impossible by a legislative act, he is entitled to recover in this action against respond-

ent, for any benefit or enrichment which inured to respondent as the result of appellant's acts under the contract with the county.

In this connection, appellant cites the case of *Jones v. Judd,* 4 N. Y. 411, in which it appeared that the plaintiff, as subcontractor, had agreed to perform services which were to be paid for as the work progressed, save as to ten per cent of the contract price, which was to be reserved until completion of the contract. Before the work was finished, legislation was enacted which prevented plaintiff from completing his contract. The plaintiff was allowed to recover the reserved percentage on work performed. This case is not here in point, if for no other reason because respondent was not a party to the contract, performance of which was rendered impossible by legislation. The purpose of such a saving clause as appellant relies upon is to protect vested rights, not rights that are purely of a contingent nature. 16 C. J. S., Constitutional Law, p. 642, § 215.

September 19, 1934, appellant was advised by the Federal agency then in charge of the project that, while the same had been found eligible for a loan and grant, at that time no funds were available, and that no prediction could be made as to when, if ever, funds would become available.

In the case of *Royer v. Board of County Supervisors,* 176 Va. 268, 10 S. E. (2d) 876, the plaintiff, a civil engineer, entered into a contract with the county board, whereby it was agreed that, if plaintiff prepared an application to the PWA for funds for a certain project, and the application was approved, the plaintiff would prepare plans and specifications and supervise construction of the project, and would receive a fee equal to five per cent of the construction cost. The plaintiff prepared and filed the application, but no Federal funds

were then available and the application was not approved. Subsequently Federal funds became available, whereupon the plaintiff attempted to enforce the contract. Recovery was denied, both on the contract and by way of a *quantum meruit*. Concerning the termination of the contract, the court said:

"While the grant was approved in June, 1938, on the original application filed some three years previous, this might have occurred after the lapse of even a longer period. It does not make sense to say that under these circumstances the parties remained mutually obligated so that if at any time thereafter a federal grant had been secured and accepted the board would have been bound to have employed the plaintiff and the latter would have been bound to have done the work.

"It is clear, we think, that from the time of the refusal of the grant in 1936 until July, 1938, the plaintiff had no claim on the board and the latter had no claim on him. The original negotiations between the parties were terminated."

The court relied upon the general rule that, where the rights of the parties are governed by an express and enforcible contract, the law will not imply another or different contract, and that the rule applies with equal force to contracts calling for the payment of a contingent fee.

Appellant cites many cases in which persons who performed services or supplied materials under void or *ultra vires* contracts were permitted to recover in actions based on quasi contracts. Appellant cites other cases in which recovery on quasi contracts was allowed, the plaintiff having performed acts which it was the legal duty of the defendant to perform (*French v. Lewis & Clark County*, 87 Mont. 448, 288 Pac. 455), and where the plaintiff was allowed recovery based upon a *quantum meruit (New York v. Davis*, 7 F. (2d) 566). The case at bar does not fall within any of the classes in which recovery may be had upon the basis of quasi

contract, and, as above stated, the allegations of appellant's complaint do not bring the same within the rule governing contracts implied in fact.

The facts alleged do not show that respondent was unjustly enriched. Appellant performed extensive services in an able and efficient manner. Doubtless these services resulted in benefit to respondent, but that benefit affords no basis for the establishment of a legal claim against respondent.

The trial court did not err in sustaining respondent's demurrer to appellant's complaint, and the judgment dismissing the action is accordingly affirmed.

SIMPSON, C. J., ROBINSON, and GRADY, JJ., concur.

MILLARD, J. (dissenting)—If, as admitted by the demurrer, appellant provided necessary data respecting construction of the bridge, which information was accepted and used by respondents, the demurrer should have been overruled, whereupon respondents could have answered and on the issues thus framed appellant would have been required to sustain the burden of proving his allegations; therefore, I dissent.

---

July 16, 1943. Petition for rehearing stricken.