FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30  AM 9: 47

STATE OF WASHINGTON

BY_____
                  DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID HYYTINEN, an individual, | No. 45117-4-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| CITY OF BREMERTON and the STATE OF WASHINGTON, in its capacity as legal representative of the Washington State Patrol, | |
| Respondents. | |

BJORGEN, A.C.J. — David Hyytinen appeals the summary judgment orders issued in

favor of the City of Bremerton (City) and the State of Washington, as legal representative of the

Washington State Patrol (Patrol), concerning a vehicle that the City sold to him. Hyytinen sued

the City and the Patrol after the Patrol seized as stolen property a vehicle Hyytinen had

purchased from the Bremerton Police Department (BPD). Hyytinen's complaint alleged (1)

breach of contract, (2) fraud, (3) unjust enrichment, (4) negligence, and (5) violation of his right

to due process under the federal constitution. Hyytinen later moved to amend the complaint to

allege a state constitutional due process claim against the Patrol, which motion the trial court

denied.

The trial court granted summary judgment in favor of Bremerton and the Patrol on the grounds that the statute of limitations barred Hyytinen's contractual claims; Hyytinen's failure to comply with the notice-of-claim statute and to plead sufficient factual allegations barred the fraud and negligence claims; the unjust enrichment claim failed because a contract controlled the terms of sale; and no independent cause of action supported the federal due process claim. Because genuine issues of material fact remain as to whether Hyytinen's purchase contract with the City was voidable based on mutual mistake of fact and whether he has met the requirements of unjust enrichment, we reverse summary judgment in favor of the City on Hyytinen's unjust enrichment claim and remand to the trial court for adjudication of that claim and the related issue of mutual mistake. We affirm the trial court's order of summary judgment on Hyytinen's other claims against the City and his claims against the Patrol.

## FACTS

In 2004, the BPD seized a 2002 Cadillac Escalade from Darryl Anthony Shears, a suspect in a drug investigation. Shears forfeited the Escalade to BPD as part of a stipulated settlement agreement, and the State of Washington issued a certificate of title naming BPD as the legal owner in March 2006.

Although BPD knew that Shears had two felony convictions for possession of stolen property and forgery, it did not check whether the publicly visible vehicle identification number (VIN), a unique sequence of numbers and letters assigned to each new motor vehicle at the factory, matched the Escalade's confidential VIN, marked in various concealed locations generally known only to law enforcement. *See State v. Owens*, 180 Wn.2d 90, 93, 323 P.3d 1030

(2014) *and United States v. Short*, 4 F.3d 475, 480-81 (7th Cir. 1993) (discussing nature and purpose of confidential VINs). Instead, BPD ran the license plate number through certain law enforcement data bases, none of which listed the Escalade as stolen.[1] The BPD advertised the Escalade in the newspaper and sold it to Hyytinen for $21,500 through a private auction company on June 30, 2007.

Later, the State Department of Licensing learned that California authorities had discovered another 2002 Escalade with the same VIN, and in April 2011, sent Hyytinen a letter requesting that he have the Escalade's VIN inspected by the Patrol. On May 2, the Department of Licensing sent Hyytinen a letter informing him that it had cancelled the certificate of ownership for the Escalade because it had issued the certificate in error and because Hyytinen had not responded to the April inspection request.[2]

When Hyytinen presented the Escalade to the Patrol for a VIN inspection on July 5, 2011, the Patrol determined that the VIN appearing on the dashboard and driver's side door were forgeries and did not match the confidential VIN marked elsewhere on the vehicle. The Patrol

---

[1] We note that in its motion for summary judgment, the City represented to the trial court that the BPD ran the VIN through a law enforcement database, and that "[a]ll of the information available to the City revealed that the Escalade was not stolen." Clerk's Papers (CP) at 340-41. In its brief here, the City repeats these claims. Randy Plumb, the officer who performed the inspection, however, only claimed to have checked the license plate number. Plumb admitted in his deposition that he knew about the confidential VIN system, including at least some of the confidential VIN locations, but expressly denied ever checking the publicly visible VIN or comparing it to the confidential VIN. Thus, contrary to the City's representations, (1) it did not check either the public VIN or the confidential VIN in any database, and (2) the City had information available to it that would have revealed the Escalade's stolen status. After we directed counsel's attention to these misrepresentations at oral argument, the City submitted an "errata" amending its brief to omit the erroneous assertions.

[2] Hyytinen apparently did not receive this second letter, which the Department of Licensing sent to an address different from that appearing on the first letter.

immediately seized the Escalade, informing Hyytinen that it would not return the vehicle to him and that he needed to remove his personal property from it and find another way to get home. The Patrol concedes that it never notified Hyytinen of the seizure in writing by certified mail, as required by the statute authorizing such seizures, or of his right to a hearing at which he could attempt to establish valid title to the Escalade.

The Patrol discovered that a car dealership in Canada had reported the Escalade stolen in November 2002. On August 5, 2011, the Patrol informed Hyytinen that the dealership's insurance company wanted to auction the Escalade to recoup the money it had paid out on the dealership's claim. The Patrol subsequently released the Escalade to the auctioneer.

## PROCEDURAL HISTORY

Hyytinen filed this lawsuit on September 21, 2011, naming only BPD as defendant and stating various causes of action, including breach of contract, fraud, and unjust enrichment.[3] Hyytinen submitted a tort claim form to the City on November 3, 2011, and amended the complaint to name the City as a defendant the next day. On February 6, 2012, Hyytinen amended the complaint again, adding a negligence claim based on the BPD's failure to check the Escalade's VIN prior to selling it and clarifying the contractual claim by alleging breach of the implied warranty of good title.

On September 5, 2012, Hyytinen submitted a tort claim form to the State of Washington, informing it that he intended to amend his complaint to add the Washington State Patrol as a defendant. On December 13, Hyytinen again amended his complaint, naming "the State of Washington, in its capacity as legal representative of the Washington State Patrol" as a defendant

---

[3] Hyytinen also alleged a violation of the Consumer Protection Act, chapter 19.86 RCW, and an unlawful taking, but does not contest the trial court's dismissal of those claims in this appeal.

and adding a cause of action for violation of his federal due process rights by the Patrol. Clerk's Papers (CP) at 309-16. Although he later argued that this third amended complaint included a negligence claim against the Patrol, its negligence cause of action alleged only the same facts underlying his initial negligence claim against the City.

The City moved for summary judgment, arguing that (1) the statute of limitations in Washington's codification of the Uniform Commercial Code (U.C.C.) barred Hyytinen's contractual claims; (2) Hyytinen's failure to submit a tort claim form at least 60 days prior to filing suit, as required by RCW 4.96.020(4), required dismissal of his fraud and negligence claims against the City; (3) Hyytinen's fraud claim failed as a matter of law because he alleged neither that the City made any false representation of fact nor that the City knew that the Escalade had been stolen; (4) Hyytinen's negligence claim failed as a matter of law because the BPD owed Hyytinen no duty to verify Shears's ownership of the Escalade; and (5) Hyytinen's unjust enrichment claim failed as a matter of law because a contract governed his relationship with BPD with respect to the Escalade and because the BPD, having surrendered the Escalade in return for Hyytinen's payment, did not receive any benefit for which it did not pay.

The Patrol also moved for summary judgment, arguing that Hyytinen's due process claim failed as a matter of law because (1) he had no constitutionally protected property interest in the Escalade; (2) given Hyytinen's actual notice of the seizure, the existence of a readily discoverable procedure under state law to dispute that seizure alone satisfied the requirements of due process; and (3) Hyytinen failed to invoke 42 U.S.C. section 1983, the federal statute creating a cause of action for deprivation of a federal right under color of state law, and did not name a "person" within the meaning of section 1983 as a defendant. The Patrol also alleged that Hyytinen's claims against it were frivolous and requested an attorney fee award. After hearing

argument from Hyytinen and the City, the trial court granted the City's summary judgment motion and dismissed Hyytinen's claims against it with prejudice.

The trial court granted summary judgment in favor of the Patrol on Hyytinen's constitutional claims two weeks later. However, when the Patrol noted an order for entry of judgment dismissing the suit, Hyytinen opposed it, arguing that the third amended complaint also stated a negligence claim against the Patrol. The trial court agreed with Hyytinen and dismissed only the constitutional claim.

The Patrol then moved for summary judgment on the negligence claim on the ground that the complaint did not allege any conduct by the Patrol that would amount to negligence. Hyytinen then moved to amend the complaint again to "clarify" his negligence claim against the Patrol and add a due process claim based on the Washington Constitution's due process clause. WASHINGTON CONSTITUTION, art. 1, § 3; CP at 922-30. The trial court denied Hyytinen's motion on the grounds that it was untimely and unfairly prejudicial to the Patrol and that no authority supported the proposition that a state due process claim would survive where a federal claim had failed as a matter of law.

The trial court ultimately granted the Patrol's summary judgment motion and dismissed Hyytinen's suit, entering judgment in favor of the Patrol for $200 in statutory attorney fees and declining to award reasonable attorney fees. Hyytinen timely appeals.

ANALYSIS

Hyytinen contends that the trial court erred in dismissing on summary judgment his claims against both the City and the Patrol. After setting forth the relevant standards of review, we first address the trial court's grant of summary judgment to the City, then consider the trial

6

court's denial of Hyytinen's motion to amend the complaint and its dismissal of his claims against the Patrol.

## I. STANDARD OF REVIEW

We review a grant of summary judgment de novo and perform the same inquiry as the trial court. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 407-08, 282 P.3d 1069 (2012); *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). A court should grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condominium Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to do so, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

In determining whether summary judgment was proper, we must consider all facts, and the reasonable inferences that follow from them, in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26; *Atherton*, 115 Wn.2d at 516. Thus, we consider the record here in the light most favorable to Hyytinen.

We review the denial of a motion to amend a pleading for abuse of discretion. *Kwiatkowski v. Drews*, 142 Wn. App. 463, 496, 176 P.3d 510 (2008). The relevant court rule provides, however, that "leave shall be freely given" to a party to amend its pleadings "when justice so requires." CR 15(a). Delay alone does not necessarily suffice to justify denial of a motion to amend; instead, "[t]he touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party." *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 100 Wn.2d 343, 350, 670 P.2d 240 (1983).

## II. HYYTINEN'S CLAIMS AGAINST THE CITY

Hyytinen argues that the trial court erred in dismissing his claims against the City on summary judgment because (1) the four-year U.C.C. statute of limitations does not apply to his breach of contract claim; (2) his contract with BPD is void and therefore does not bar his unjust enrichment claim; and (3) he complied with the notice of claim statute and alleged sufficient facts to support his fraud and negligence claims. We consider each contention in turn.

A.    Contractual Claims Against the City

Hyytinen contends that the U.C.C.'s four-year statute of limitations, codified in Washington as RCW 62A.2-725(1), does not bar his contract claims against the City. In his reply brief, Hyytinen argues for the first time that equitable tolling should extend the limitations period. We hold that the U.C.C. limitation period plainly applies and bars Hyytinen's contractual claims.

Washington's enactment of the U.C.C. covers all "transactions in goods," RCW 62A.2-102; that is "all things . . . which are movable at the time of identification to the contract for sale." RCW 62A.2-105. The statute thus applies to BPD's sale of the Escalade to Hyytinen.

The U.C.C. statute of limitations provides that "[a]n action for breach of any contract for sale must be commenced within four years after . . . the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RCW 62A.2-725. Hyytinen argues that this limitations period applies only to the contract, defined as "the total legal obligation that results from the parties' agreement," but not to the broader "agreement." Br. of Appellant at 25-26. His brief fails to explain, however, how the duty to deliver the Escalade with good title falls outside the contract, as defined. Consequently, his argument is unavailing, and RCW 62A.2-725, on its face, would bar any contractual claim Hyytinen might bring.

Nevertheless, Hyytinen argues that the statute of limitations should be tolled under the equitable tolling doctrine because of BPD's bad faith. RCW 62A.2-725(4) specifies that "[t]his section does not alter the law on tolling of the statute of limitations." Washington courts have adopted the "equitable tolling" doctrine, which "'permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed.'" *In re Carlstad*, 150 Wn.2d 583, 593, 80 P.3d 587 (2003) (quoting *State v. Duvall*, 86 Wn. App. 871, 874, 940 P.2d 671 (1997)).

Hyytinen, however, raises equitable tolling for the first time in his reply brief. We generally decline to consider issues not raised in the trial court, RAP 2.5(a), and "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). For this reason, and because we hold below that Hyytinen has adequately preserved his unjust enrichment claim, which is inconsistent with his equitable tolling argument, we decline to consider equitable tolling

further. Hyytinen's contract claims are barred by the statute of limitations.

B.      Unjust Enrichment

Hyytinen contends that he is entitled to restitution from the City based on unjust enrichment. Hyytinen argues that he may invoke this equitable remedy even though a contract governed his transaction with the City because either the parties failed to agree to the essential terms and thus no valid contract formed or, in the alternative, because the contract "is void as against public policy." Br. of Appellant at 29. In his reply brief, Hyytinen argues more specifically that he may avoid the contract due to material misrepresentation or mutual mistake of fact.

The City maintains that, so long as a contract governs their relationship, Hyytinen has no unjust enrichment claim against BPD. The City contends that "[t]he stolen nature of the Escalade does not eliminate any of the elements of a contract claim," and thus, the fact that Hyytinen "may not have received what he bargained for . . . does not invalidate the contract." Br. of Resp't (City of Bremerton) at 10.

Our Supreme Court has characterized the theory of unjust enrichment on which Hyytinen relies as a "contract implied in law" or "quasi contract." *Young v. Young*, 164 Wn.2d 477, 484-85, 191 P.3d 1258 (2008). The *Young* court articulated the elements of such an unjust enrichment claim as "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young*, 164 Wn.2d at 484-85. The *Young* court specified also that "[u]njust enrichment is the method of recovery for the value of the benefit retained *absent any contractual relationship*." 164 Wn.2d at 484 (emphasis added).

The mere existence of a contract between the parties does not preclude an unjust enrichment claim, however. *See Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943) (Party may not bring an implied contract action relating to the same matter covered by a valid express contract when the alleged implied contract is in contravention of the valid express contract.).

The U.C.C. defines "contract" as "the total legal obligation that results from the parties' agreement as determined by this title as supplemented by any other applicable laws." RCW 62A.1-201(12). Under RCW 62A.2-312, "there is in a contract for sale a warranty by the seller that . . . [t]he title conveyed shall be good, and its transfer rightful." This warranty of title is thus part of the total legal obligation resulting from Hyytinen's agreement with BPD, as supplemented by the U.C.C. Therefore, the terms of the express contract cover the matter at issue here, and, under the rule stated in *Chandler*, 17 Wn.2d at 604, the existence of a valid contract would bar Hyytinen's unjust enrichment claim.

Hyytinen argues in his reply brief that his unjust enrichment claim may proceed because either a valid contract never formed or the contract was voidable due to mutual mistake. As noted, we generally decline to consider issues raised for the first time in a reply brief. Here, however, Hyytinen made the following argument, under the heading "No Valid Contract," in opposition to the City's summary judgment motion:

> A *valid* contract exists only where the following elements are found: an offer, acceptance, consideration (mutual promises or performance), legal capacity and legal substance and compliance with the statue of frauds. The Escalade's stolen status precluded the BPD from entering into a valid contract.

11

CP 478-79. Because Hyytinen raised the issue in the trial court and presented closely analogous arguments that sufficiently raised the validity of the contract in his opening brief, we address the claim on its merits.

First, Hyytinen contends that no contract formed because BPD's material misrepresentation induced his assent to the agreement. The Restatement (Second) of Contracts section 164(1) (1981) explains that

> [i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.

Under this rule, "even a material innocent misrepresentation can render a contract voidable." *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 390, 858 P.2d 245 (1993).

This argument's Achilles' heel is the fact that Hyytinen never had contact with anyone at BPD prior to buying the Escalade. The Restatement defines "misrepresentation" as "an assertion that is not in accord with the facts." RESTATEMENT (SECOND) OF CONTRACTS, § 159 (1981). The comment notes that such an assertion "commonly takes the form of spoken or written words," but also acknowledges that "[a]n assertion may also be inferred from conduct other than words." RESTATEMENT (SECOND) OF CONTRACTS, § 159, cmt. a (1981).

Hyytinen does not point to any specific words or conduct of BPD's that amounted to an assertion that it had good title. Instead, he merely asserts that "[i]mplicit in its offer of sale was the BPD's representation that the Escalade had good title" and notes that, as a law enforcement agency, BPD "stood in a superior position of knowledge and ability to investigate" the matter. Reply Br. of Appellant at 19 n.8.

As discussed above, BPD arguably held itself out as the legal owner of the Escalade. However, Hyytinen also admitted that he knew BPD had seized the vehicle. Under these circumstances, merely offering an item for sale is not sufficient to qualify as a misrepresentation that would require the conclusion that a contract never was formed.

Hyytinen also invokes the doctrine of mutual mistake of fact. The doctrine provides that

> [w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake.

RESTATEMENT (SECOND) OF CONTRACTS, § 152(1) (1981). The "test of materiality is whether the contract would have been entered into had the parties been aware of the mistake." *Simonson v. Fendell*, 101 Wn.2d 88, 92, 675 P.2d 1218 (1984). The Restatement illustrates these principles with an example involving facts somewhat analogous to those here:

> A, a violinist, contracts to sell and B, another violinist, to buy a violin. Both A and B believe that the violin is a Stradivarius, but in fact it is a clever imitation. A makes no express warranty and, because he is not a merchant with respect to violins, makes no implied warranty of merchantability under Uniform Commercial Code § 2-314. The contract is voidable by B.

RESTATEMENT (SECOND) OF CONTRACTS, § 152, at cmt. g, illustration 14 (1981). Washington courts have adopted the mutual mistake doctrine. *See Simonson*, 101 Wn.2d at 91-92.

The remedy for mutual mistake is restitution:

> A person who renders performance under a contract that is subject to avoidance by reason of mistake . . . has a claim in restitution to recover the performance or its value, as necessary to prevent unjust enrichment.

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT, § 34(1) (2011). Thus, mutual mistake of fact concerning the seller's title may make a contract voidable and entitle the buyer to restitution. If the contract between Hyytinen and the City were voidable on this basis and if

13

Hyytinen voided it, no express contract would bar Hyytinen's unjust enrichment claim. *Chandler*, 17 Wn.2d at 604.

Genuine issues of material fact remain as to whether the elements of mutual mistake are present. Those issues include, but are not necessarily limited to, whether both parties at the time of contracting were mistaken as to a basic assumption on which the contract was made, whether that mistake had a material effect on the agreed exchange of performances, and whether Hyytinen bears the risk of the mistake. RESTATEMENT (SECOND) OF CONTRACTS § 152(1). According to Restatement (Second) of Contracts section 154, at 402-03, a party bears the risk of a mistake when

> (a) the risk is allocated to him by agreement of the parties, or
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Similarly, genuine issues of material fact are present as to whether Hyytinen meets the elements of an unjust enrichment claim, assuming the contract is voidable for mutual mistake of fact. Those elements include (1) whether BPD received a benefit, (2) whether the received benefit is at Hyytinen's expense, and (3) whether the circumstances make it unjust for the defendant to retain the benefit without payment. *See Young*, 164 Wn.2d at 484-85.

In sum, issues of material fact remain on Hyytinen's unjust enrichment claim and on the question of mutual mistake, which must be resolved before the unjust enrichment claim may be reached. Consequently, the trial court erred in granting the City summary judgment on Hyytinen's claim of unjust enrichment.

14

## C. Tort Claims Against the City

Hyytinen claims that the trial court erred in dismissing his fraud and negligence claims against the City, arguing that the claims raise material questions of fact and that he complied with RCW 4.96.020's notice-of-claim requirements. The City counters that courts require "[s]trict compliance" with the 60-day notice-of-claim requirement and that Hyytinen failed to plead sufficient facts in support of his fraud and negligence claims. Br. of Resp't (City of Bremerton) at 11. We agree with the City.

In *Bosteder v. City of Renton*, our Supreme Court[4] addressed the precise issue presented here regarding the notice of claim statute:

> Because the original complaint asserted a trespass claim against the city, and the complaint was served on the same day the claim for damages was filed, thereby commencing the action, Bosteder did not comply with the 60-day waiting period requirement. His attempt to rectify that problem by amending his complaint 60 days later does not change that fact. *See* RCW 4.16.170; RCW 4.96.020(4). We require strict compliance with the procedural requirements of the claim filing statute.

155 Wn.2d 18, 47, 117 P.3d 316 (2005), *superseded by statute on other grounds, Wright v. Terrell*, 162 Wn.2d 192, 195 n.1, 170 P.3d 570 (2007). Thus, the fact that Hyytinen amended his complaint more than 60 days after filing the notice of claim does not remedy his failure to comply with the statute's procedural requirements.

Because the statute of limitation has not yet run on Hyytinen's tort claims, however, the question remains whether the trial court erred in dismissing these claims with prejudice. *See* RCW 4.16.080(2). In the case on which the City relies, *Troxell v. Rainier Public School District*

---

[4] Although only four justices signed the majority opinion of the court, Justice Ireland's separate opinion agreed with the majority opinion on this point. *Bosteder*, 155 Wn.2d at 59 (Ireland, J., "agree[d] with the majority except as it holds that the claim filing statute applies to individuals").

*No. 307*, the court noted that the trial court had dismissed Troxell's suit with prejudice "[b]ecause the statute of limitations had run." 154 Wn.2d 345, 349, 111 P.3d 1173 (2005). Where the limitations period has not yet expired, the plaintiff would presumably remain free to reinstitute the suit after filing the notice of claim and waiting 60 days. *See Dyson v. King County*, 61 Wn. App. 243, 245-46, 809 P.2d 769 (1991) (holding the county estopped from asserting the plaintiff had failed to comply with a notice of claim provision because it "waited until the applicable statute of limitations had run" before raising the defense).

In dismissing the fraud and negligence claims, however, the trial court also relied on the City's argument that Hyytinen's tort claims raised no issue of material fact. We agree. With respect to Hyytinen's fraud claim, the City's argument plainly carries the day. The failure to prove by clear, cogent, and convincing evidence any element of fraud "is fatal to recovery." *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d 388, 395, 457 P.2d 535 (1969). The elements of fraud include "a representation of existing fact, . . . its falsity, [and] the speaker's knowledge of its falsity." *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012). As discussed above, Hyytinen points to no specific words or conduct amounting to an assertion that BPD had good title to the Escalade, other than the mere fact that BPD, a law enforcement agency, offered the Escalade for sale. Even were we to consider this a representation of existing fact, Hyytinen points to no evidence that BPD actually knew it was false at the time. Thus, his fraud claim fails from the outset. We hold that the trial court did not err in dismissing the fraud claim on summary judgment.

Hyytinen's negligence claim presents a closer question. "The elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to

plaintiff proximately caused by the breach." *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). The Uniform Controlled Substances Act, chapter 69.50 RCW, imposes a duty on law enforcement agencies that seize property under its forfeiture provision to

> cause notice to be served within fifteen days following the seizure on the owner of the property seized and the person in charge thereof and any person having any known right or interest therein, . . . of the seizure and intended forfeiture of the seized property.

RCW 69.50.505(3). Based on this, Hyytinen argues that (1) BPD had a duty under RCW 69.50.505(3) to notify the Escalade's true owner of the seizure; (2) given what BPD knew about Shears and its special knowledge of the confidential VIN system, it breached that duty by not comparing the Escalade's public VIN with the confidential VIN; and (3) that this failure proximately caused Hyytinen to pay for a vehicle that would later be seized without compensation returned to him.

The City counters that the duty imposed by RCW 69.50.505(3) runs to persons with an ownership interest in the property at the time of seizure, not to a subsequent purchaser of forfeited property. The City further contends that BPD fulfilled this duty by checking the Escalade's license plate in a law enforcement database and notifying Shears, the only person listed as owner therein. We find the first argument persuasive.

The notice provision in the Uniform Controlled Substances Act's forfeiture provision plainly aims to protect innocent owners, whose property was used for illegal purposes without their consent, from losing their property. *See, e.g.*, RCW 69.50.505(1)(g), (h) (specifying that "[n]o personal property may be forfeited . . . to the extent of the interest of an owner, by reason of any act or omission which that owner establishes was committed or omitted without the owner's knowledge or consent"). Because Hyytinen had no interest in the Escalade at the time

of the initial seizure, BPD owed him only the duty it generally owes to the public to remove stolen property from the stream of commerce. Therefore, the public duty doctrine governs Hyytinen's negligence claim.

The public duty doctrine provides that "no liability may be imposed for a public official's negligent conduct unless it is shown that 'the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general.'" *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468 (1983)). An exception to the doctrine arises "where the Legislature enacts legislation for the protection of persons of the plaintiff's class." *Taylor*, 111 Wn.2d at 164. Here, however, Hyytinen falls outside the class the relevant provisions in RCW 69.50.505 aim to protect. The only other possibly relevant exception to the public duty doctrine,[5] where a municipality's agents have a "special relationship" to the plaintiff, requires "an express assurance given by the public official." *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 879, 288 P.3d 328 (2012). As already discussed, Hyytinen points to no such express assurance.

For these reasons, Hyytinen's arguments fail under the public duty doctrine. The trial court did not err in dismissing his tort claims against the City on summary judgment.

### III. HYYTINEN'S CLAIMS AGAINST THE PATROL

Hyytinen argues that the Patrol (1) violated his right to due process under the federal constitution, (2) violated his rights under state statutes and the state constitution, and (3) negligently caused him damages. We first address Hyytinen's federal due process claim, then

---

[5] For a discussion of the exceptions to the public duty doctrine, see *Bailey v. Town of Forks*, 108 Wn.2d 262, 268-69, 737 P.2d 1257 (1987), *amended by* 753 P.2d 523 (1988).

consider whether the trial court abused its discretion in denying leave to amend the complaint to add the state law claims.

A.    Due Process Claims Against the Patrol

Hyytinen contends that the Patrol violated his due process rights under the federal constitution by failing to notify him in writing of his right to a hearing to contest the seizure, as required by RCW 46.12.725(2). Hyytinen maintains that this prejudiced him because, as a buyer in the ordinary course of business, he could have demonstrated good title to the vehicle at such a hearing under RCW 62A.1-201(9), or because he could have negotiated with the true owner to protect his rights.

The Patrol maintains that Hyytinen failed to properly raise a due process claim because his pleadings do not name any individual defendant or invoke 42 U.S.C. section 1983, the statute creating a cause of action for the violation of federal rights under color of state law. On the merits of the due process claim, the Patrol counters that, given Hyytinen's actual notice of the seizure, the availability of a readily discoverable procedure for a post-deprivation hearing satisfies the requirements of due process regardless of the Patrol's failure to provide the notice required by RCW 46.12.725(2).

In *City of West Covina v. Perkins*, the United States Supreme Court held that, "[w]hen the police seize property for a criminal investigation . . . , due process does not require them to provide the owner with notice of state-law remedies." 525 U.S. 234, 240, 119 S. Ct. 678, 142 L. Ed. 2d 636 (1999). The *Perkins* court acknowledged that "[i]ndividualized notice that the officers have taken the property is necessary . . . because the property owner would have no other reasonable means of ascertaining who was responsible for his loss," but held that "[n]o similar rationale justifies requiring individualized notice of state-law remedies . . . established by

19

published, generally available state statutes and case law." 525 U.S. at 241. Those state law remedies, including the right to a hearing to contest the seizure, are set out in RCW 42.12.725. Thus, regardless of whether Hyytinen properly pled a section 1983 claim or named a defendant subject to suit under section 1983, the Patrol's admitted failure to comply with the notice requirements of RCW 46.12.725(2) did not violate the federal due process clause.[6]

B.      State Law Claims Against the Patrol

Hyytinen also contends that the trial court abused its discretion in denying his motion to amend his complaint to include a due process claim based on the Washington Constitution. In addition to recasting the federal due process claim discussed above as a state law claim, Hyytinen further contends that the Patrol violated his due process rights by refusing to release the vehicle to him, as required by RCW 46.12.725(3), once he presented evidence of lawful ownership. Hyytinen also argues that the Patrol's failure to comply with RCW 46.12.725's notice requirements amounted to negligence per se, and that the trial court erred by dismissing this claim on summary judgment. Hyytinen further maintains that the Patrol violated the statute governing seizure of stolen vehicles "as a matter of law," presenting the same arguments offered in support of his due process claims. Br. of Appellant at 23-25.

The Patrol counters that the trial court did not abuse its discretion in denying Hyytinen's motion to add a state constitutional claim to his complaint because Hyytinen never contended

---

[6] Hyytinen seeks to distinguish *Perkins* on the ground that the police seized the property at issue there pursuant to a search warrant, noting that "a seizure of personal property without a warrant is per se unreasonable unless law enforcement has probable cause to believe the property holds contraband or evidence of a crime." Reply Br. of Appellant at 9-10. *Perkins*, however, relied on the presence of "published, generally available state statutes and case law" establishing state-law remedies in holding that individualized notice of such remedies was not required. 525 U.S. at 241. State law remedies here are similarly available.

that our constitution's due process clause offers more protection than the federal equivalent, and the court had already dismissed the federal due process claim. The Patrol further contends that Hyytinen failed to allege any conduct by it that could give rise to a valid negligence claim. We find the Patrol's arguments persuasive.

As discussed, Hyytinen's state law claims against the Patrol amount to a negligence claim and a claim based on the due process clause of the Washington Constitution and RCW 46.12.725's notice requirements. As for the first claim, the negligence cause of action in Hyytinen's amended complaint did not allege any conduct by the Patrol at all. The only duty mentioned in his complaint's negligence section is that imposed by the Uniform Controlled Substances Act to notify the rightful owner of seized property, which duty Hyytinen alleges BPD breached, not the Patrol. Indeed, the only factual allegation anywhere in the complaint against the Patrol is that it "did not provide Mr. Hyytinen with notice or a hearing regarding its intent to seize the vehicle." CP at 310-11.

Turning to the state due process claim, even under the most generous interpretation of notice pleading, the complaint cannot be read to give the Patrol notice of any claim other than the federal due process claim we have already rejected. Thus, unless the trial court erred in denying Hyytinen's motion to amend his complaint to state a due process cause of action under the Washington Constitution and to "clarify" the negligence claim against the Patrol, Hyytinen's arguments fail.

C.    Motion to Amend Complaint

As discussed, we review a trial court's denial of a motion to amend a pleading for abuse of discretion. *Kwiatkowski*, 142 Wn. App. at 496. CR 15 provides that "leave shall be freely given" to a party to amend its pleadings "when justice so requires." As noted, delay alone does

21

not necessarily justify denial of a motion to amend; instead, "[t]he touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party." *Caruso*, 100 Wn.2d at 350.

In denying Hyytinen's motion to amend, the trial court relied on three grounds: Hyytinen's 18-month delay in seeking to amend, prejudice to the Patrol due to the fact that the motion came after the Patrol had already prevailed on its first summary judgment motion, and, "most importantly, [on] the futile nature of the proposed amendment." VRP (June 14, 2013) at 13. Specifically, the trial court noted that "[t]here is simply no authority for the proposition that a state due process claim is any different from a federal due process claim." VRP (June 14, 2013) at 13.

Although Hyytinen points out that state courts may interpret their constitutions to provide greater protections than the United States Constitution, he points to no authority establishing that Washington's courts have done so in the context of the right to notice of state law remedies for seizure of property. Hyytinen's briefing present no *Gunwall*[7] analysis from which we could conclude that our state's constitution provides greater protection than the federal constitution on this issue, nor does he point to any statute creating a cause of action for a state agency's failure to comply with RCW 46.12.725's notice requirements. The trial court did not abuse its discretion in denying Hyytinen's motion to amend based on its conclusion that amendment of the pleadings to include Hyytinen's state law claims would be futile.

As for the negligence claim, Hyytinen does not show any material issue of fact as to whether the Patrol's failure to notify him of his right to a hearing proximately caused any

---

[7] *See State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986).

damages. Hyytinen obtained counsel well before the Patrol disposed of the Escalade, and his attorneys presumably informed him of his right to attempt to establish his title to it at a hearing. With that knowledge, the absence of the same information from the Patrol would have no effect.

Further, the law clearly establishes that Hyytinen had no valid claim against the true owner. The relevant U.C.C. provision provides:

> A purchaser of goods acquires all title which his or her transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value.
>
> . . . .
>
> Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him or her power to transfer all rights of the entruster to a buyer in ordinary course of business.

RCW 62A.2-403. Even if a court accepted Hyytinen's argument that he qualified as a "good faith purchaser for value," or that BPD entrusted the Escalade to a merchant who deals in goods of the kind, Hyytinen's claim would fail against the true owner. As a leading treatise explains,

> When the entruster does not have title to the goods, no title is created in the purchaser from the entrustee by virtue of U.C.C. § 2-403. Thus, the purchaser of a stolen automobile does not acquire any title even though the purchaser buys in good faith from a dealer and a facially valid title certificate had been obtained.

3A LAWRENCE'S ANDERSON ON THE U.C.C. § 2-403:122, at 711-12 (rev. 3d ed. 2002) (footnotes omitted). Thus, the hearing that the Patrol's negligence allegedly denied him would have availed Hyytinen nothing.

Hyytinen's remedy lies with the BPD, not the Patrol. The trial court did not abuse its discretion in denying Hyytinen's motion to amend his complaint, and thus did not err in dismissing his claims against the Patrol. With respect to those claims, we affirm.

## IV. ATTORNEY FEES

Hyytinen requests reasonable attorney fees on appeal. He bases his claim on RCW 69.50.505(6), which mandates attorney fees to a "claimant [who] substantially prevails" in proceedings under the Uniform Controlled Substances Act's civil forfeiture provision. Br. of Appellant at 46-47. He also claims that "equity would require that in order to do substantial justice, Mr. Hyytinen should be awarded all fees and costs of this suit." Br. of Appellant at 47. For the first time in his reply brief, Hyytinen also requests fees from the Patrol under 42 U.S.C. section 1988(b), which gives courts discretion to award fees to the prevailing party in a section 1983 suit.

Hyytinen's claims based on RCW 69.50.505(6) and 42 U.S.C. section 1988(b) plainly fail: he did not institute this suit under either provision, nor has he prevailed on the claims he based on those provisions. In addition, Hyytinen presents no argument or authority in his opening brief to support his claim for an equitable award of costs and reasonable attorney fees as RAP 18.1(b) requires. We deny the request.

## CONCLUSION

Genuine issues of material fact remain as to whether Hyytinen's contract with the City was voidable based on mutual mistake of fact and whether he has met the requirements of unjust enrichment. Therefore, we reverse summary judgment in favor of the City on Hyytinen's unjust enrichment claim and remand to the trial court for adjudication of that claim and the related issue of mutual mistake. We affirm the trial court's order of summary judgment on Hyytinen's other

claims against the City and his claims against the Patrol.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

I concur:

MAXA, J.

I concur in the result only:

LEE, J.